STATE OF WEST VIRGINIA *v.* BOYD MANGUS

(CC 595)

Submitted September 7, 1938. Decided September 20, 1938.

416

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

*Emmet F. Scaggs,* for defendant.

MAXWELL, PRESIDENT:

This is a certified case involving an indictment which the trial court held insufficient.

The indictment charges that the defendant, in the county of Logan, "did unlawfully drive a motor vehicle upon a public highway in said county carelessly and heedlessly in wilful and wanton disregard of the rights and safety of others, without due caution and circumspection, and at a speed and in a manner so as to endanger one Calvin Messer, and did then and there strike the said Calvin Messer with said motor vehicle, against the peace and dignity of the State."

The indictment is grounded on Code, 17-8-18 (i), the stated sub-section being part of an enactment of 1931. Legislative Acts 1931, Chapter 59. Sub-section (i) reads: "Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner

so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving."

By a subsequent provision of the same statute a violation of sub-section (i) is made a misdemeanor, punishable by fine or imprisonment or both.

It will be observed that the indictment closely follows the language of the statute.

The circuit court was of opinion that both the indictment and the statute are fatally defective and void because of lack of sufficient particularity. This conclusion was reached in the light of our constitutional provision (West Virginia Constitution, Article 3, Section 14) that in criminal trials "the accused shall be fully and plainly informed of the character and cause of the accusation * * * ."

In many states the courts have upheld statutes couched in general terms after the manner of the one here under consideration. Consult: *Mulkern* v. *State,* 176 Wis. 490, 187 N. W. 190; *Commonwealth* v. *Pentz,* 247 Mass. 500, 143 N. E. 322; *State* v. *Andrews,* 108 Conn. 209, 142 Atl. 840; *Ex Parte Daniels,* 183 Cal. 636, 192 Pac. 442, 21 A. L. R. 1172; *Schultz* v. *State,* 89 Neb. 34, 130 N. W. 972, 33 L. R. A. (N. S.) 403, Ann. Cas. 1912C, 495; *State* v. *Schaeffer,* 96 Ohio 215, 117 N. E. 220, L. R. A. 1918B, 945, Ann. Cas. 1918E, 1137; *State* v. *Goldstone,* 144 Minn. 405, 175 N. W. 892; *State* v. *Sullivan,* 58 N. D. 732, 227 N. W. 230; *Ex Parte Daniels,* 41 Okla. Cr. 399, 273 Pac. 1010; *Usary* v. *State* (Tenn. Sup.), 112 S. W. (2d) 7, 114 A. L. R. 1401.

The last thirty years have brought into daily use in the United States millions of motor vehicles. From their constant operation on the highways, there have come appalling lists of personal injuries, many of them fatal. These instrumentalities, because of their great weight and high speed, are inherently dangerous unless carefully driven. Unfortunately, experience has proven that all too often those in charge of such vehicles are strangely indifferent to the welfare of others. Human nature is so constituted that many people, when driving a power-

ful, smooth-running automobile, seem loath voluntarily to employ the same degree of caution which usually characterizes their other activities of life. There is too willing surrender to the toxic effect of dominating power at the finger tips. Amazing disregard for the safety of others is the result. It is on this background and for these reasons that the legislatures and the law enforcement agencies have striven to minimize highway disaster. It has been found that in addition to statutes fixing maximum speeds under variant circumstances, and other statutes carrying specific mandates or inhibitions respecting the highway use by motor vehicles, it is highly desirable that there be a statute, broad in terms, penalizing in generality the heedless and wanton operation, in any manner, of a motor vehicle on a public way. Though a vehicle be driven within the maximum speed limit, the manner of its operation and the circumstances attending may be such as to create great hazard to others. Statutory provisions such as the one here involved are intended to apply to such situations.

Does the sub-section here before us run counter to the constitutional provision that "the accused shall be fully and plainly informed of the character and cause of the accusation * * * "? This provision of organic law was written to protect accused persons from prejudice by the capricious actions of public officials, and from surprise at trial by being called on to defend against a charge or charges of which they were not informed. When that constitutional safeguard has been respected, an accused may not invoke the constitution as a shield against prosecution under a statute merely because its terms may be broader and somewhat more elastic than ordinarily obtains. The Supreme Court of Massachusetts, in dealing with a statute similar to the one under consideration, aptly said: "By its terms 'whoever upon any way operates a motor vehicle * * * so that the lives or safety of the public might be endangered' is made subject to punishment. The operation of an automobile upon a way is a clearly defined act, susceptible of being

easily understood. Its operation so as not to endanger the lives or safety of the public is the description of a fact. While it may not be easy to formulate in words a comprehensive definition of that fact applicable to all cases, it is not difficult to comprehend with some approach to accuracy the thought conveyed by the description of that fact." *Commonwealth* v. *Pentz, supra.*

Authority need not be cited for the familiar propositions that a legislative enactment must be upheld unless plainly at variance with constitutional law, and that the organic instrument itself must be interpreted in the light of the changing conditions of succeeding decades. Thus, here, the evils sought to be curbed by the statutory provision in question did not come into existence, so far as motor vehicles are concerned, until many years after the adoption of the constitutional provision which the defendant has invoked. The basic purpose of that provision must be preserved by the courts, but such course can be pursued without the erection of a fanciful barrier against legislation designed to combat new evils.

We distinguish this case from *State* v. *Lantz*, 90 W. Va. 738, 111 S. E. 766, 26 A. L. R. 894. Therein we held: "An act of the Legislature making it a crime to operate an automobile around a curve on a public road without having the same under control, or without reducing the speed thereof to a reasonable and proper rate, is violative of sections 10 and 14 of article 3 of the Constitution of this State, and is void for uncertainty and indefiniteness." Clearly, as stated in that case, there is no criterion to determine whether an automobile was under control when rounding a curve, or whether the speed at which it was operated was reasonable and proper. The terms are purely and essentially relative. In that enactment the evil interdicted was too indefinite of characterization and evanescent of description to afford a basis for plainly informing the accused of the accusation he was called on to meet. Under the sub-section at bar, however, reckless driving which endangers other persons or their property is the conduct forbidden. No one need

entertain difficulty of understanding what is meant thereby.

We therefore hold that the discussed statutory provision is not unconstitutional.

The indictment (see *supra*) rests on and employs merely the general terms of the statute. There is no mention of the specific evil conduct whereof the defendant is charged. Therein lies its insufficiency. Such indictment should carry reasonable particularization so that "the accused shall be fully and plainly informed" of the exact nature of the accusation against him. For its failure of specification we hold the indictment herein fatally defective.

Being of opinion that the trial court committed no error in sustaining the demurrer to the indictment because of its indefiniteness, we affirm the judgment.

*Affirmed.*