STATE OF WEST VIRGINIA

*v.*

JEFFREY EDEN

(No. 13837)

Decided July 10, 1979.

*Robert N. Bland* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Stephen D. Herndon,* Assistant Attorney General, for defendant in error.

McGRAW, JUSTICE:

Jeffrey Eden appeals from a final order of the Circuit Court of Jackson County wherein he was sentenced to jail for a period of thirty days and fined two hundred dollars upon his conviction for reckless driving. We reverse the conviction and remand for a new trial.

Petitioner was originally arrested uppn a warrant issued by a justice of the peace of Jackson County charging

> That Jack L. Eden on the 27th day of October, 1975, in said Jackson County, did unlawfully drive a motor vehicle upon a public highway and School Grounds of Ripley High School, in willful and wanton disregard for the safety of persons

and property by then and there to-wit: weaving, spinning wheels, speeding, against the peace and dignity of the State.

A trial was held in the justice of the peace court, and petitioner was found guilty of a misdemeanor and fined fifty dollars, together with costs of ten dollars. Petitioner applied for a trial *de novo* in the Circuit Court of Jackson County. After some delay[1] petitioner was tried in his absence before a petit jury on July 13, 1976,[2] and the jury returned a verdict of guilty as charged in the warrant. On July 15, 1976, with petitioner present, the court sentenced him to the Jackson County jail for thirty days and fined him two hundred dollars plus costs.

---

[1]Petitioner's trial was set for March 9, 1976. On that day, the State moved to continue the trial to March 17, 1976, and moved to amend the warrant for a misnomer, a point not raised herein. The court granted the continuance and corrected the misnomer from Jack L. Eden to Jeffrey Eden. On March 17, 1976, the State moved to dismiss the warrant, to which petitioner objected; the court moved that the trial be continued until March 25, 1976. On March 22, 1976, petitioner moved for a continuance of the trial to the next term of court due to the absence of a material witness and the court granted said continuance. On June 28, 1976, at the calling of the docket for the next term of court, the matter was set for trial on July 13, 1976 by petitioner's counsel.

[2]Although petitioner was present on all prior trial dates, he was not present on July 13, 1976, due to his counsel's failure to inform him of the date of his trial. With regards to this, the following exchange occurred at petitioner's sentencing:

Mr. Skeen:

... I want to inform the Court that I have spoken with Mr. Eden last night and he is present in the courtroom today, in an effort to determine why he wasn't here at the trial and he informed he didn't get any letter from me. So, I looked through my file and I didn't find a copy of any letter which I forwarded to him. I specifically recollect after these cases were all set on that day that I marked them in my docket and that I returned to my office and told my secretary to send out letters to all of the persons that had trials set. Last night I returned to the office and I looked through the other files and I remember specifically signing some of those letters, but I do not specifically remember a letter directed to Jeffrey Eden.

In seeking reversal of the final judgment of the circuit court, petitioner assigns as error: (1) the failure to direct the verdict upon the insufficiency of the warrant; (2) the failure to direct the verdict upon the insufficiency of the evidence to support the warrant; (3) the increased sentence imposed as contrary to the law and the evidence and in violation of the due process law of the Constitutions of the United States and West Virginia; (4) the failure to grant a new trial when counsel had not informed appellant of the trial date; and (5) the neglect of counsel in preparing the case.

---

Therefore, I must assume it is quite possible that he didn't receive notification from me that a trial was to be held on that day and consequently it is possible that his rights have been violated or that through my oversignt or neglct he was not informed of the fact that there was trial; and he is present in the courtroom and will upon Your Honor's request represent to you that he didn't receive any letter or notification from me.

* * * *

Mr. Skeen:
Now Jeffrey, I want to direct your attention first of all to the last term of court and ask you if you were present in the courtroom at any time during that term of court?
Mr. Eden:
When?
Mr. Skeen:
The last term of court, the one that preceeded this one?
Mr. Eden:
When we had the court before?
Mr. Skeen:
Right.
Mr. Eden:
Yes.
Mr. Skeen:
Speak up so the Judge can hear you.
Mr. Eden:
Yes.
Mr. Skeen:
And at that time did the Judge tell you that this trial would be held; I mean that your case would be continued until the next term of court on the last Monday in June?
Mr. Eden:
Yes.

## I.

Since petitioner wanted to be present at his trial, he approaches his absence at trial as being proof that his counsel was neglectful of his interests. We prefer to view this issue from the standpoint of a defendant's *right*, if any, to be present at his trial for a misdemeanor.

Petitioner concedes that under present law it is possible for a defendant to appear by counsel in misdemeanor

---

Mr. Skeen:
All right. Now since that time have you had any correspondence with me?
Mr. Eden:
No.
Mr. Skeen:
Have you contacted me?
Mr. Eden:
No.
Mr. Skeen:
Have we discussed this matter at any time in between the last term of court—
Mr. Eden:
No.
Mr. Skeen:
—and this term of court?
Mr. Eden:
No.
Mr. Skeen:
Up until this evening?
Mr. Eden:
That was yesterday.
Mr. Skeen:
And you received no notification or correspondence from me?
Mr. Eden:
No.
Mr. Skeen:
Indicating that the trial would be held?
Mr. Eden:
No.
The lower court found the petitioner had made no effort to keep in touch with his attorney, had failed to pay attention when the trial date was announced at the previous term and had slept on his rights in general.

cases in West Virginia and not be personally present.[3] Syl. pt. 4, *State v. Campbell*, 42 W. Va. 246, 24 S.E. 875 (1986); W. Va. Code §§ 62-2-19, 62-2-21 [1923]. We acknowledge the existence of this long established rule, yet fail to see the distinction between misdemeanor cases, particularly those punishable by imprisonment, and felony cases in which the defendant has both a constitutional and statutory right to be present in person at all critical stages of his trial.

The constitutional right to be present arises from and is implicit in the fundamental right to confront one's accusers of guaranteed by the Sixth Amendment of the United States Constitution and art. 3, § 14 of the West Virginia Constitution. *State v. Boyd*, ____ W. Va. ____, 233 S.E.2d 710 (1977); syl. pt. 2, *State ex rel. Grob v. Blair*, ____ W. Va. ____, 214 S.E.2d 330 (1975).[4]

Comparatively, the statutory right of an accused charged with a felony to be present at every stage of a criminal trial when anything is done to affect him emanates from a common law right which antedated our Constitution. As analyzed in *Blair, supra* at 334:

> In English history, a prisoner in a felong trial had no right to the advice and assistance of counsel. The accused was required to defend himself and it was held that he must be present in

---

[3]However, imprisonment cannot be imposed without the defendant being present for *sentencing*. Syl. pt. 4, *State v. Campbell*, 42 W. Va. 246, 24 S.E. 875 (1896); *State ex rel. Boner v. Boles*, 148 W. Va. 802, 137 S.E.2d 418 (1964), *overruled on other grounds State ex rel. Grob v. Blair*, 214 S.E.2d 330, 336 (1975); and *State v. Self*, 130 W. Va. 515, 44 S.E.2d 582 (1947) *citing Campbell*. This is not a problem here because petitioner was present for sentencing.

[4]The court in *Boyd* quoted the following from *Faretta v. California*, 422 U.S. 806 at 816 (1975): "... the confrontation clause of the 6th Amendment gives the accused a right to be present at all stages of the proceedings where fundamental fairness might be thwarted by his absence." This Court noted that *Faretta* based this statement on *Snyder v. Massachusetts*, 291 U.S. 97, 54 S. Ct. 330, 78 L. Ed. 674 (1934), where the Supreme Court reasoned that presence of the defendant was essential in order to assist his counsel. *Boyd, supra* at 718.

> court when any step was taken in his case regardless of how insignificant it was. Comment, 65 W. Va. L. Rev., at 51 (1962).

This old English rule was adopted early in the Commonwealth of Virginia, the right of presence being secured by statute in Virginia since 1849. *Blair, supra; State v. Vance*, 146 W. Va. 925, 124 S.E.2d 252 (1962), *overruled on other grounds, Grob, supra*, at 336. Unchanged, it now appears in W. Va. Code § 62-3-2 [1923]: "A person indicted for a felony shall be personally present during the trial therefor." This provision reiterates the due process rights granted by our constitution but the statute is not exclusive in application.

It seems basic to us that this right of presence afforded a person accused of a felony applies as well to a person accused of a misdemeanor. The same liberty and property interests are at stake; due process dictates that he be given the same rights. Indeed, W. Va. Const. art. 3, § 14 states:

> Trials of crimes, *and misdemeanors*, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county. In *all such trials*, the accused shall be fully and plainly informed of the character and cause of the accusation, and be confronted with the witness against him, and shall have the assistance of counsel, and a reasonable time to prepare for his defence; and there shall be awarded to him compulsory process for obtaining witnesses in his favor. (emphasis added).

This Court has held that the above section gives to a defendant in a misdemeanor prosecution the right to assistance of counsel, i.e., the court must inform the defendant of his right to counsel, retained or appointed, and the failure to do so, absent a showing that he made a knowing and intelligent waiver, will void the convic-

tion.[5] This Court has similarly recognized the misdemeanor defendant's fundamental right to remain silent under both the Federal and State Constitutions.[6] If one accused of a misdemeanor has these "fundamental" rights, why does he not likewise have the right to be present at his own trial? We can discern no reason why he does not. Denial of the right to be present at trial absent a waiver of the right is in effect a denial of the right to confront adverse witnesses. Consequently we hold that a defendant in a misdemeanor case has a fundamental right to be present during all critical stages of his trial.

Of course, none of these rights are absolute requirements. A defendant may at any time knowingly and intelligently waive the right to counsel, the right to remain silent, the right to be present at trial and even the right to a trial (by pleading guilty). *State ex rel. Grob v. Blair, supra.* But waiver of a constitutional right is not implied to be lightly regarded, and if such a waiver is to be implied at all, it can only be in situations in which it is clear that the accused has not only a full knowledge of all facts and of his rights, but a full appreciation of the effects of his voluntary relinquishment. *Holland v. Boles,* 225 F. Supp. 863 (N.D. W. Va. 1963). This Court has held that courts indulge every reasonable presumption against waiver of a constitutional right and will not presume acquiescence in the loss of such fundamental

---

[5]*Bullett v. Staggs,* ____ W. Va. ____, 250 S.E.2d 38 (1978). The Court noted that "[t]he fact that there is no specific statutory language providing that a municipal court or a magistrate can appoint counsel for an indigent defendant cannot be permitted to defeat a right guaranteed by the Sixth Amendment and buttressed by a multitude of court decisions." at 40.

[6]*State v. Blosser,* ____ W. Va. ____, 207 S.E.2d 186 (1974); U.S. Const., Amend. V.; W. Va. Const. art. 3, § 5. The West Virginia provision states, in part: "... Nor shall any person, in any criminal case, be compelled to be a witness against himself ..."
The Court in discussing this did not distinguish misdemeanors from felonies but took it as given that a misdemeanor is a criminal case.

right. *State ex rel. Calloway v. Boles*, 149 W. Va. 297, 140 S.E.2d 624 (1965); syl. pt. 2, *State ex rel. May v. Boles*, 149 W. Va. 155, 139 S.E.2d 177 (1964). An accused may, by declaration and conduct, waive a fundamental right protected by the Constitution, but it must be demonstrated that the waiver was made knowingly and intelligently. *State ex rel. Grob v. Blair, supra.*

The record here discloses no evidence that indicates the petitioner's knowing and intelligent waiver of his right to be present at trial. Indeed, the evidence tends to show his desire to be present. His absence was not predicated on a voluntary relinquishment of his rights but on a misconception or lack of information as to the date of his trial. Under these circumstances, the circuit court erred in trying the case in the defendant's absence.

As to petitioner's contention that his counsel was negligent in not having interviewed a material defense witness before trial, we note that the record reveals that defense counsel's motion to continue just prior to trial was based in part on his inability to speak with the witness. In view of this action by defense counsel and the absence of other evidence, we cannot say he was negligent in his preparation of the case.

## II.

Petitioner contends that the action of the circuit court in imposing a harsher sentence then he received in justice court was a violation of due process. He bases this contention upon the holding in several federal cases including *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed.2d 656 (1969) and *Patton v. North Carolina*, 381 F.2d 636 (4th Cir. 1967) *cert. denied* 390 U.S. 905, 88 S. Ct. 818, 19 L. Ed.2d 871 (1968). We find petitioner's argument meritorious and we vacate the circuit court's sentence.

In both *Patton* and *Pearce*, the petitioners had been successful in challenging their original convictions on appeal and were given harsher sentences upon convic-

tion at retrial.[7] In *Patton* the Fourth Circuit dismissed as simplistic the legal fiction that in seeking and obtaining a new trial the defendant is deemed to have consented to a complete eradication of the consequences of his first trial. The court found that conditioning the defendant's constitutional right to appeal from an invalid conviction on the notion that he has consented to a possible increase in punishment violates due process.[8] Besides placing on the right to appeal an impermissible burden which could deter individuals from challenging invalid convictions,[9] increased sentencing could be used vindic-

---

[7]Patton had been originally sentenced to twenty years in prison on his nolo contendere plea to the charge of armed robbery. After serving five years of his sentence, he obtained a new trial on the basis of his failure to be represented by counsel at trial. At retrial, with the assistance of counsel, he pleaded not guilty to the charge and was convicted. The trial judge sentenced Patton to a term of twenty-five years, deducting from that the five years he had already spent in prison.

Pearce was convicted of assault with intent to commit rape and was sentenced to a term of twelve to fifteen years in prison. His conviction was overturned several years later upon the ground that an involuntary confession had been unconstitutionally admitted in evidence against him. Pearce was retried, convicted and sentenced to an eight year prison term which, when added to time he had already served on the original conviction, amounted to a longer total sentence than that originally imposed.

[8]"[This policy] would confront the prisoner with the unhappy choice of either abandoning his constitutional right to a fair trial and serving out his prison term under the invalid sentence, or exercising that right under the hazard, in the event of a second conviction, of being treated as though the years of imprisonment already served had never occurred. . . . North Carolina deprives the accused of the constitutional right to a fair trial, then dares him to assert his right by threatening him with the risk of a longer sentence." 381 F.2d at 639–640.

[9]To illustrate the fear of a defendant of receiving an increased sentence upon retrial, the Court reprinted the following letter received by the trial judge in *Patton v. North Carolina*, 256 F. Supp. 225 (W.D. N.C. 1966). The letter is often cited in post-*Patton* decisions.

**380**

tively to punish defendants for having the temerity to seek and obtain new trials. Even in cases where additional evidence which might justify increased punishment was introduced at retrial, the impossibility of determining improper motivation necessitated that protection of a defendant's rights outweigh the danger of inadequate sentencing. To avoid "even the *appearance*"[10] (emphasis in the original) of vindicative motivation, *Patton* laid out a blanket prohibition on imposing increased sentences at retrial. We agree with this view.

In *Pearce* the United States Supreme Court, after dismissing the idea that increased sentencing is absolutely barred by the U. S. Constitution,[11] noted that "[t]his Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts."[12] The fear of

"Dear Sir:

I am in the Mecklenburg County jail. Mr. _____ chose to retry me as I knew he would.

Sir the other defendant in this case was set free after serving 15 months of his sentence I have served 34 months and now I am to be tried again and with all probility I will receive a heavier sentence then before as you know sir my sentence at the first trile was 20 to 30 years. I know it is usuelly the courts prosedure to give a larger sentence when a new trile is granted I guess this is to discourage Petitioners.

Your Honor, I don't want a new trile I am afraid of more time * * * *.

Your Honor, I know you have tried to help me and God knows I apreceate this but please sir don't let the state re-try me if there is any way you can prevent it.

Very truly yours"

256 F. Supp. at 231, n. 7.

[10]381 F.2d at 641.

[11]Arguments that increased sentencing violates the Double Jeopardy and Equal Protection Clauses of the federal Constitution were not approved.

[12]395 U.S. at 724–25 *citing Rinaldi v. Yeager*, 384 U.S. 305, 86 S. Ct. 1497, 16 L. Ed.2d 577 (1966); *Draper v. Washington*, 372 U.S. 487,

increased sentencing on retrial as punishment for prosecuting an appeal from his conviction fetters the defendant's exercise of his right to appeal and violates due process, even in cases of nonconstitutional error. However, *Pearce*, while condemning punitive increases in sentencing on retrial, stopped short of prohibiting imposition of heavier sentences in all cases.[13]

We note that *Pearce* and *Patton* deal with the question of increased sentences imposed on criminal defendants after they have successfully attacked their original convictions and have been convicted at retrial. The case before us presents a petitioner who did not attack his conviction but rather elected to pursue statutory post-conviction relief in the form of a trial *de novo* in a superior court. The precise issues raised in *Pearce* and *Patton* are not raised here. However, the question of increased sentencing on reconviction after remand from an appellate court is a matter of grave concern to this Court and a discussion of the issues involved seems necessary to a determination of the case at hand. Therefore, we will consider the effect on due process in West Virginia of increased sentences imposed after reconviction following an appeal attacking the original conviction as well as those imposed upon conviction at a trial *de novo* granted as a matter of statutory right.

In West Virginia a person convicted of a crime is entitled to the right to appeal his conviction and a denial of that right constitutes a violation of both federal and state due process clauses and renders the conviction

83 S. Ct. 774, 9 L. Ed.2d 899 (1963); *Lane v. Brown,* 372 U.S. 477, 83 S. Ct. 768, 9 L. Ed.2d 892 (1963); *Douglas v. California,* 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed.2d 811 (1963); *Griffin v. Illinois,* 351 U.S. 12, 76 S. Ct. 585, 100 L. Ed. 891 (1956).

[13]The Court held that where a sentencing judge imposing a more severe sentence after a new trial states in the record his reasons for doing so, bases his decision on identifiable conduct of the defendant occurring after the original sentencing, and includes in the record the factual data upon which the increased sentence is based, this is sufficient to insure the absence of vindictive motivation and compliance with due process. 395 U.S. at 726.

void. *State ex rel. Johnson v. McKenzie,* ____ W. Va. ____, 226 S.E.2d 721 (1976); *Bratcher v. Cooke,* 155 W. Va. 850, 188 S.E.2d 769 (1972).[14] It is clear to us that when a defendant refuses to prosecute an appeal to which he is entitled by law for fear he will receive a heavier sentence on retrial, he has been denied his right to appeal. The decision not to appeal is the defendant's but the necessity of making the decision is forced upon him by the State. The State is in effect imposing conditions upon the defendant's right to appeal by telling him that he has the right, but that by exercising it he risks a harsher sentence.

Limiting increased sentencing to those situations where the defendant's conduct after the time of the original sentencing arguably supports the increase reduces the possibility of vindictive motivation and the apprehension of punishment but it does not relieve it altogether. The State is still imposing a condition on the defendant's right to appeal in violation of due process, and the apprehension of punishment for taking an appeal is still lodged in the defendant's mind. Increased sentencing upon reconviction after successful prosecution of an appeal inherently gives rise to a fear of harsher penalties and retribution which burdens or chills the defendant's right to appeal and should not be permitted in any circumstances.

This conclusion is consistent with the rule recommended by the Advisory Committee on Sentencing and Review of the ABA. That rule provides:

> Where prosecution is initiated or resumed against an applicant who has successfully sought post-conviction relief and a conviction is ob-

---

[14]U. S. Const., Amend XIV; W. Va. Const. art. 3, § 10. This is not to say that one convicted of a crime has an absolute right to have his conviction reviewed. Rather, our Constitution creates an absolute right to apply for a writ of error, supersedeas or appeal. W. Va. Const. art. 8, § 4 [1974]; *State v. Legg,* 151 W. Va. 401, 151 S.E.2d 215 (1966). It is the denial of this right that offends due process and renders the conviction void.

tained, or where a sentence has been set aside as the result of a successful application for post-conviction relief and the defendant is to be re-sentenced, the sentencing court should not be empowered to impose a more severe penalty than that originally imposed.[15]

The Advisory Committee rejected the idea that additional information not available to the first sentencing judge could be the basis for an increased penalty.

... the Advisory Committee recommends that the original sentence operate as a ceiling in cases where a new conviction is obtained. Even though new facts may be brought to light which might occasionally warrant a heavier sentence, the Advisory Committee believes it is preferable to establish a standard that is prophylactic in effect and easily administered, whereby sentencing judges are not given power to increase a sentence when an applicant has exercised his right to seek a post-conviction remedy.[16]

Moreover, we agree with the proposition that "[a]ppellate courts should not be burdened with the unpleasant task of assessing a trial court's sincerity."[17]

However, this Court has held that where a conviction and sentence are unenforceable due to a denial of the defendant's right to appeal, the sentence is void and a nullity, and a court imposing a subsequent sentence may impose any penalty provided by law, including a more severe one. *State ex rel. Bradley v. Johnson*, 152 W. Va. 655, 166 S.E.2d 137 (1969); *State ex rel. Boner v. Boles*, 148 W. Va. 802, 137 S.E.2d 418 (1964). We note that

---

[15]ABA Project on Standards for Criminal Justice, *Standard Relating to Post-Conviction Remedies*, Approved Draft § 6.3(a) (1968).

[16]*Id.*, Commentary, p. 96.

[17]*State v. Holmes*, 281 Minn. 294 at 303, 161 N.W. 2d 650 at 656 (1968). In *Patton*, the Court of Appeals also viewed scrutinizing the motivation of the sentencing judge as "most distasteful." 381 F.2d at 641.

when these cases were decided, this Court did not have the benefit of the *Pearce* decision holding increased punishment on retrial violative of due process, except in limited circumstances. Indeed, the due process aspect of increased sentencing played no part in the West Virginia decisions. In light of our discussion of the inherent threat of more severe sentencing placing a burden on the criminal defendant's right to appeal and in view of the decisions in *Pearce* and *Patton,* we conclude that with respect to the permissibility of imposing increased sentences upon retrial after a successful appeal, *Bradley* is no longer good authority and we overrule syl. pt. 6 of *Bradley* and syl. pt. 5 of *Boner.* Protection of the criminal defendant's fundamental right to appeal and avoidance of any possible vindictiveness in resentencing would force us to hold that upon a defendant's conviction at retrial following prosecution of a successful appeal, imposition by the sentencing court of an increased sentence violates due process and the original sentence must act as a ceiling above which no additional penalty is permitted.

In view of this discussion we turn now to the case at hand to apply the above-enunciated principles. Here the petitioner elected to obtain a trial *de novo* in the circuit court after his conviction in the justice of the peace court. This post-conviction relief is provided by statute and grants the defendant an absolute and unconditional right to a new trial.[18] The petitioner here did not appeal from any error in his conviction in the justice court but exercised his statutory right to a new trial in the circuit court.[19]

---

[18]W. Va. Code § 50-18-10 [1965] (repealed 1976). "Every person sentenced to imprisonment by the judgment of a justice, or to the payment of a fine of ten dollars or more * * * shall be allowed to appeal to the court of the county having jurisdiction thereof upon application therefor within a reasonable time after such judgment is entered. * * *" *State v. Emsweller,* 78 W. Va. 214, 88 S.E. 787 (1916); *Vetock v. Hufford,* 74 W. Va. 785, 82 S.E. 1099 (1914).

[19]We do not consider here the question of whether the right granted by statute to remove the case to the circuit court for trial

Some courts have held that the *Pearce* rationale applies only to retrials on remand and that there is no due process probibition on increased sentencing upon conviction in a *de novo* proceeding. *Colton v. Kentucky*, 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed.2d 584 (1972); *Lemieux v. Robbins*, 414 F.2d 353 (1st Cir. 1969) *cert. denied*, 397 U.S. 1017, 90 S. Ct. 1247, 25 L. Ed.2d 432 (1970); *Griffith v. Kerkhoff*, 345 F. Supp. 1160 (W.D. Va. 1972); *Mann v. Commonwealth*, 359 Mass. 661, 271 N.E.2d 331 (1971); *People v. Olary*, 382 Mich. 559, 170 N.W.2d 842 (1969); *State v. Stanoscheck*, 186 Neb. 17, 180 N.W.2d 226 (1970); *State v. Harrell*, 281 N.C. 111, 187 S.E.2d 789 (1972); *State v. Speights*, 280 N.C. 137, 185 S.E.2d 152 (1971); *Johnson v. Commonwealth*, 212 Va. 579, 186 S.E.2d 53, *cert. denied* 407 U.S. 925 (1972); *Evans v. Richmond*, 210 Va. 403, 171 S.E.2d 247 (1969); *Maughs v. Charlottesville*, 181 Va. 123, 23 S.E.2d 787 (1943). In *Colton,* the U. S. Supreme Court found there was nothing in the record to show that Kentucky's two-tier system, similar to our own, carried the inherent danger of vindictiveness found to exist in *Pearce* or that defendants convicted in the inferior court would be deterred from pursuing their right to a new trial in a superior court. The dissent, however, refused to distinguish *Pearce* on these grounds.

> "... *Pearce* did not rest on evidence that most trial judges are hostile to defendants who obtain a new trial after appeal. *Pearce* was based, rather, on the recognition that whenever a defendant is tried twice for the same offense, there is inherent in the situation the danger of vindictive sentencing the second time around, and that this danger will deter some defendants from seeking a second trial. This danger, with its deterrent effect, is exactly the same even though the second trial takes place in a different court from the first. Certainly a defendant has good reason to fear that his case will not be well received by a

---

*de novo* is actually an appeal or something else. The question was not raised in the briefs and we reserve determination of that issue until some future time.

second court after he rejects a disposition as favorable as the sentence originally imposed in this case."[20]

Moreover, requiring a showing of vindictive motivation places too heavy a burden on the defendant. *Patton v. North Carolina, supra* at 641.

We agree with Justice Marshall's analysis of *Pearce.* The opportunity for vindictive sentencing is inherent in any system which permits increased sentencing upon conviction at a new trial. And even if vindictiveness can be positively shown not to exist, the deterrent effect of increased sentencing on the exercise of the right to obtain a new trial deprives a defendant of his statutory right to a trial *de novo*, his only avenue of post-conviction relief, in the same way it deprives a defendant desiring to attack his conviction of his right to appeal. We can see no justification for distinguishing between the burden placed on the defendant's rights in either instance. Other jurisdictions have followed this reasoning in disallowing increased sentences upon conviction at a trial *de novo. Wood v. Ross*, 434 F.2d 297 (4th Cir. 1970); *Bronstein v. Superior Court*, 106 Ariz. 251, 475 P.2d 235 (1970); *State v. Shak*, 51 Haw. 626, 466 P.2d 420 (1970); *Eldridge v. State*, 256 Ind. 113, 167 N.E.2d 48 (1971); *Cherry v. State*, 9 Md. App. 416, 264 A.2d 887 (1970); *Commonwealth v. Harper*, 219 Pa. Super. 100, 280 A.2d 637 (1971).

Accordingly, we hold that under W. Va. Const. art. 3, § 10 a defendant who is convicted of an offense in a trial before a justice of the peace and exercises his statutory right to obtain a trial *de novo* in the circuit court is denied due process when, upon conviction at his second

---

[20]407 U.S. 122 at 126–127 (Marshall, J., dissenting). In support of his contention that increased sentencing produces a deterrent effect on the exercise of a defendant's right to a trial *de novo*, Justice Marshall referred to an order of a Kentucky court of general jurisdiction dismissing an application for trial *de novo* upon the defendant's motion, which cited fear of increased sentencing at the new trial as the basis for the motion. *Id* at 125–126.

trial, the sentencing judge imposes a heavier penalty than the original sentence.

## III.

Petitioner's final assignment of error is that the trial court erred in not directing the verdict upon the insufficiency of the warrant. The warrant charged that the petitioner

"... on the 27th day of October, 1975, in said Jackson County, did unlawfully drive a motor vehicle upon a public highway and school grounds of Ripley High School in willful and wanton disregard for the safety of persons and property by then and there to-wit: Weaving, spinning wheels, speeding, ..."

Petitioner alleges that the warrant does not mention with particularity the persons and property wantonly and willfully disregarded and that the evidence at trial failed to show that the place where the actions complained of occurred was a public highway. For these reasons the petitioner claims the warrant was insufficient and the trial court should have directed the verdict. We do not agree.

In West Virginia, where a warrant is for an offense of which a justice of the peace has jurisdiction to try and pronounce judgment, the warrant is treated as an indictment or presentment and must charge the offense with the same particularity as a presentment or indictment. *State v. Crummitt*, 129 W. Va. 366, 40 S.E.2d 852 (1947); *State v. Harless*, 105 W. Va. 480, 143 S.E. 151 (1927); *State v. Harr*, 77 W. Va. 637, 88 S.E. 44 (1916). An indictment or warrant for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based. *State v. Slie*, ____ W. Va. ____, 213 S.E.2d 109 (1975); *State v. Younger*, 130 W. Va. 236, 43 S.E.2d 52 (1947). The purpose of these requirements is to

insure that the accused is protected from the capricious acts of public officials and from surprise at trial by being called on to defend against a charge of which he was unaware. *State v. Mangus,* 120 W. Va. 415, 198 S.E. 872 (1938); to permit an accused to prepare his defense and to preclude a subsequent prosecution for the same offense. *U. S. v. Quicksey,* 525 F.2d 337 (4th Cir.), *cert. denied,* 423 U.S. 1087, 96 S. Ct. 878, 47 L. Ed.2d 97 (1975); *State v. Ash,* 139 W. Va. 374, 80 S.E.2d 339 (1954); *State v. Harrison,* 130 W. Va. 246, 43 S.E.2d 214 (1947).

The statement of the offense in the warrant here is couched in the terms of the statute on which the warrant is based.[21] The warrant states with particularity the conduct which is alleged to have constituted reckless driving, *State v. Mangus, supra,* and the time and place at which it was alleged to have occurred. And the record discloses no dispute as to which statute the charge was based on. The failure of the warrant to state which persons or property whose safety was disregarded does not deprive the petitioner of the ability to prepare his defense, nor does it place him in danger of being tried twice for the same offense. We note that W. Va. Code § 62-2-8 provides that "[w]here an intent to injure . . . is required to constitute an offense, it shall be sufficient in indictment or accusation therefor, to allege generally an intent to injure. . ., without naming the person intended to be injured. . . ." *See Davis v. Comm.,* 99 Va. 838, 38 S.E. 191 (1901). We believe that in this situation it was unnecessary to allege in the warrant the particular persons or property endangered by the petitioner's conduct. A warrant charging, under W. Va. Code § 17C-5-3 [1951] that the petitioner's conduct was in wanton and willful disregard of the safety of persons or property without specifically naming the persons or property involved was sufficient to fully inform the petitioner of the reckless driving charge against him.

---

[21]W. Va. Code § 17C-5-3(a) [1951] (amended 1979). "Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."

Petitioner's assignment of error relating to the failure of the evidence to support the fact that the complained of conduct occurred on a public highway is without merit. For the purposes of the reckless driving statute, "street" is defined as "... including streets, avenues, boulevards, highways, roads, lanes, alleys and all public ways; ..."[22] Testimony at trial in the circuit court indicated that one witness believed the school road to be a public road and another believed it to be on school property. Even if the road in question was on school property, it would have been owned by the school board, an agency of the State.[23] The road would have been paved and maintained by public funds. The public apparently was not restricted access to the road which joined the main highway. Speed limits of 15 miles per hour were posted on the road and the area was designated a school zone. Certainly it could not be contended that this road was a private road. We think that the evidence adduced at trial was sufficient to support the contention that the road was a public road or way for the purposes of the statute and to support the warrant.

For the reasons stated above we find that the circuit court erred in trying the petitioner in his absence and in sentencing the petitioner to a penalty exceeding that imposed by the justice of the peace.[24] We affirm the holding of the circuit court that the warrant was sufficient on its face and was supported by sufficient evidence. The case is remanded to the Circuit Court of Jackson County for a new trial in accordance with this opinion.

*Affirmed in part;*
*reversed in part.*

---

[22]W. Va. Code § 8-24-3(4).

[23]We note that by virtue of the 1979 amendment to W. Va. Code § 17C-5-3, reckless driving now specifically includes driving "... upon the ways of any state institution, or upon the property of any county boards of education, ...."

[24]On January 1, 1977 justices of the peace became magistrates by operation of the Judicial Reorganization Amendment, ratified November 5, 1974.