# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **D.M.**

**No. 16-0947** (Barbour County 16-JD-1)

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner D.M., by counsel George J. Cosenza, appeals the Circuit Court of Barbour County's September 27, 2016, order sentencing him to a term of commitment until the age of twenty-one for his first degree sexual assault conviction.[1] The State, by counsel David A. Stackpole, filed a response and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying his motion for a mistrial and abused its discretion by committing him to a juvenile detention facility.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2016, the State filed a juvenile criminal petition against petitioner, then age fourteen, alleging that he sexually abused two younger children. According to the petition, in March of 2015 and May of 2015, petitioner provided babysitting services for P.W. and D.W. While providing babysitting services, petitioner forced P.W. to perform oral sex on him. After the sexual assault, petitioner sent the children's mother, B.W., a message on Facebook asking her to forgive him for "everything he had done to P.W." and stated that he "hoped that [she] could forgive him." The children's mother telephoned the police department to report the sexual assault of P.W. Following a police investigation by Sergeant Brad Miller ("Sergeant Miller") and forensic interviews of the children, petitioner was charged with four counts of first degree sexual assault and two counts of first degree sexual abuse.

In August of 2016, petitioner's jury trial commenced. At trial, the State asked Sergeant Miller on direct exam if he attempted to obtain a statement from petitioner. Petitioner's counsel immediately objected to the State's line of questioning and moved the circuit court for a mistrial, as follows:

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

| | |
|---|---|
| The State: | Did you attempt to get a statement from [petitioner]? |
| Sergeant Miller: | On September – |
| Petitioner's Counsel: | Objection. |
| The Circuit Court: | Just a second. Come Forward. |
| Petitioner's Counsel: | Motion for mistrial. |
| The State: | The answer was going to be no, he didn't get a statement from him. |
| The Circuit Court: | It's against the rules. You cannot even inquire. The problem is if you do this then he's going to be sitting in a detention center for months. |

The circuit court then called the State, petitioner, petitioner's mother, and petitioner's counsel into chambers.

| | |
|---|---|
| The Circuit Court: | This is in chambers on the record. Mr. Curry, you have just asked for a mistrial as a result of [the State's] inquiry that goes to the 5th amendment privilege. |
| Petitioner's Counsel: | I have no choice. |
| The Circuit Court: | Well, here's what I want to explain, first of all, to [petitioner] and his mother. Ms. Elkins crossed over the boundary line here in asking about whether [petitioner] made a statement. That's totally off limits. It's basically against the rules, and [petitioner] is entitled to a mistrial as a result. Now the problem is that [petitioner] will be sitting in detention for several more months while we wait to do this all over again. And I understand it puts you between a rock and a hard place. . . . It forces you to make a decision whether you basically exercise your right or, because he is in detention . . . . Now, I can go out and attempt to explain to the jury that the question crossed the limits . . . And [The State] has absolutely no right to even ask that question. If you want a few minutes to discuss it or consider it, I will allow you to do that. |

2

| | |
|---|---|
| Petitioner's Counsel: | You know, now that – I would advise against waiving this. |

The circuit court granted petitioner's motion for a mistrial, but allowed petitioner and his counsel a five-minute recess to discuss how they wished to proceed. At the conclusion of this recess, petitioner and his counsel informed the court as follows:

| | |
|---|---|
| Petitioner's Counsel: | Well, we're going to waive. Okay, I've talked to [petitioner]. [H]e wants to go on, his mother wants to go on. They have determined to disregard my advice, which is to take the mistrial. . . . |
| Petitioner: | I just want to get it over with. Honestly, I've been stressed for the last six months and I don't want to be stressed no more. |
| The Circuit Court: | If you want a mistrial, I will grant a mistrial because it was inadmissible. |
| Petitioner: | Yes sir. I don't want a mistrial, sir. I just want to get this over with. |
| The Circuit Court: | Then let's go back and we'll get started. |

Thereafter, the victim, P.W., and petitioner both testified at the trial. Petitioner denied that he sexually assaulted the victim and that he sent the Facebook message to the victim's mother. The jury found petitioner guilty of one count of first degree sexual assault. Petitioner moved to set aside the jury's verdict.

In September of 2016, the circuit court held a dispositional hearing to consider petitioner's motion to set aside the jury's verdict. The circuit court denied petitioner's motion based on his previous waiver of his right to a mistrial. The State recommended that petitioner be placed in a juvenile detention facility because of the severity of his crime and that a suitable alternative placement was not available because of community safety concerns. Petitioner's therapist testified as to petitioner's long history of psychological and emotional problems. At the close of the evidence, the circuit court found that

[t]he best interests of the juvenile and the welfare of the public make the commitment of the juvenile to the Department of Juvenile Services ("DJS") for placement in secured detention appropriate, as no less restrictive alternative than commitment to secured detention will accomplish the juvenile's rehabilitation and will meet his needs.

The circuit court also found that a diagnostic evaluation would not be "helpful" because petitioner refused to accept responsibility for his actions. Ultimately, the circuit court committed petitioner to the DJS until the age of twenty-one, by order dated September 27, 2016. It is from the sentencing order that petitioner appeals.

The Court has previously established the following standard of review:

> The standard of review with regard to a circuit court's sentencing order or disposition under [West Virginia] Code, 49-5-13 (2002) [now West Virginia Code § 49-4714 (2015)], is whether the circuit court's ruling constitutes an abuse of discretion. *State v. Kirk N.*, 214 W.Va. 730, 741, 591 S.E.2d 288, 299 (2003), quoting *State ex rel. D.D.H. v. Dostert*, 165 W.Va. 448, 471, 269 S.E.2d 401, 416 (1980), ("discretionary" rulings of circuit courts at the dispositional stage in juvenile cases "should only be reversed where they are not supported by the evidence or are wrong as a matter of law"); *In the Interest of Thomas L.*, 204 W.Va. 501, 504, 513 S.E.2d 908, 911 (1998), (disposition in juvenile case held to be within the circuit court's "sound discretion"); *State ex rel. Department of Health and Human Resources v. Frazier*, 198 W.Va. 678, 683, 482 S.E.2d 663, 668 (1996), (circuit courts are "vested with discretion to select the appropriate disposition for a particular juvenile").

*State v. Kenneth Y.*, 217 W.Va. 167, 170, 617 S.E.2d 517, 520 (2005). Upon our review, we find no error in the circuit court's ruling below.

Simply put, petitioner has provided no support for his assertion that the circuit court erred in this case. Contrary to petitioner's argument on appeal, the circuit court did not deny his motion for a mistrial; instead petitioner made a knowing and intelligent waiver of his right to a mistrial. "An accused may, by declaration and conduct, waive a fundamental right protected by the Constitution, but it must be demonstrated that the waiver was made knowingly and intelligently." *State v. Eden*, 163 W.Va. 370, 378, 256 S.E.2d 868, 873 (1979). "The remedial doctrines of knowing and intelligent waiver and harmless error are firmly established by statute, court rule and decisions as salutary aspects of the criminal law of this State." Syl. Pt. 4, *State v. Blair*, 158 W.Va. 647, 214 S.E.2d 330 (1975).

It is clear from the record on appeal that the circuit court recognized the State's inquiry into Sergeant Miller's attempt to obtain petitioner's statement was not appropriate and the basis for a mistrial. The court communicated to petitioner the same, advised him that he was entitled to a mistrial, and that it would grant a mistrial if petitioner so desired. Petitioner was afforded time to consult with both his counsel and his mother. Ultimately, petitioner decided to waive his right to a mistrial, against the advice of his counsel. Petitioner clearly stated that he did not want the circuit court to grant the mistrial because he wanted to get the trial "over with" and did not want to prolong the trial process any further. Following petitioner's waiver, the circuit court instructed the jury to disregard the State's question and response regarding petitioner's right to remain silent.

4

Petitioner's sole argument regarding waiver is his claim that this Court held in *State ex rel. J.M. v. Taylor*, 166 W.Va. 511, 276 S.E.2d 199 (1981), that a juvenile can never waive any right without the *agreement* of counsel. In *Taylor*, three juveniles waived their respective rights to counsel, without first having been advised by counsel. We held that a juvenile cannot waive any constitutional rights unless the waiver is

> secured with counsel, guardian, parent or interested adult present. An interested, friendly adult is supposed to protect an infant from governmental coercion or pressure and to allow someone capable of understanding the nature and consequences of the waiver to help in the decision and to protect the child from inaccurate accounts of his statements at proceedings in which waiver is made.

*Id.* at 166 W.Va. at 517, 276 S.E.2d at 202. Thus, *Taylor* holds that, before a juvenile can waive the right to counsel, he must first be afforded the advice of counsel. Petitioner argues that the holding in *Taylor* is that a juvenile can never waive any right unless his/her counsel agrees to the waiver. That is simply not true. Here, and in accordance with our ruling in *Taylor*, petitioner had the benefit of the advice of counsel and his mother and chose to move forward with his trial. As such, we do not find that the circuit court erred in denying petitioner's motion for a mistrial.

Petitioner next argues that the circuit court abused its discretion by committing petitioner to a juvenile detention facility because it was required to have him evaluated prior to disposition. Petitioner also argues that the circuit court failed to consider alternate dispositions. We disagree. Rule 40(b) of the West Virginia Rules of Juvenile Procedure expressly states that the circuit court "may order a psychological examination of the juvenile prior to disposition." As such, the rule does not require that an evaluation be done, but rather, places the decision within the sound discretion of the circuit court. "As a general rule of statutory construction, the word 'may' inherently connotes discretion and should be read as conferring both permission and power. The Legislature's use of the word 'may' usually renders the referenced act discretionary, rather than mandatory, in nature." Syl. Pt. 1, *Pioneer Pipe, Inc. v. Swain*, 237 W.Va. 722, 791 S.E.2d 168 (2016).

Additionally, there was no need for an evaluation because an evaluation would not have changed the outcome of petitioner's disposition. The State recommended that petitioner be committed to a juvenile detention facility and that "due to the severity of the charges [the State] would be hard pressed to find somewhere for him to go, and a lot of places would not accept him [because of] his charges." The parties attempted, before the trial, to find a suitable alternative placement for petitioner but community safety concerns necessitated detention. Further, petitioner refused to accept responsibility for his actions and the circuit court determined that he presented a danger to the community. Therefore, we find no error in the circuit court committing petitioner to a juvenile detention facility without ordering an evaluation.

Finally, with regard to potential alternate dispositions, the circuit court made express findings that petitioner's placement in a juvenile detention facility was necessary pursuant to West Virginia Code § 49-4-714(a)(5)(A). This Court has provided the factors to be considered regarding the disposition of a juvenile:

In a juvenile proceeding it is the obligation of a trial court to make a record at the dispositional stage when commitment to an industrial school is contemplated under [West Virginia] Code, 49-5-13(b)(5) [2012] and where incarceration is selected as the disposition, the trial court must set forth his reasons for that conclusion. In this regard the court should specifically address the following: (1) the danger which the child poses to society; (2) all other less restrictive alternatives which have been tried either by the court or by other agencies to whom the child was previously directed to avoid formal juvenile proceedings; (3) the child's background with particular regard to whether there are pre-determining factors such as acute poverty, parental abuse, learning disabilities, physical impairments, or any other discrete, causative factors which can be corrected by the State or other social service agencies in an environment less restrictive than an industrial school; (4) whether the child is amenable to rehabilitation outside an industrial school, and if not, why not; (5) whether the dual goals of deterrence and juvenile responsibility can be achieved in some setting less restrictive than an industrial school and if not, why not; (6) whether the child is suffering from no recognizable, treatable determining force and therefore is entitled to punishment; (7) whether the child appears willing to cooperate with the suggested program of rehabilitation; and, (8) whether the child is so uncooperative or so ungovernable that no program of rehabilitation will be successful without the coercion inherent in a secure facility."

Syl. Pt. 5, *State v. J.S.*, 233 W.Va. 198, 757 S.E.2d 622 (2014). The circuit court considered the relevant factors. Specifically, the circuit court considered petitioner's failure to accept responsibility for his actions, the possibility for petitioner's rehabilitation, the severity of his crime, his long history of psychological and emotional problems, the recommendation for placement, and the danger petitioner posed to the community. Based on these facts, the circuit court determined that detention was the appropriate disposition for petitioner. Accordingly, we find no error below.

For the foregoing reasons, the circuit court's September 27, 2016, sentencing order is hereby affirmed.

Affirmed.

**ISSUED**:  November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker