727 S.E.2d 814

**STATE of West Virginia, Plaintiff Below, Respondent**

v.

**Karen TANNER, Defendant Below, Petitioner.**

No. 11–0634.

Supreme Court of Appeals of West Virginia.

Submitted March 27, 2012.

Filed May 24, 2012.

Barbara Harmon–Schamberger, Clay, WV, for the Petitioner.

Darrell V. McGraw, Jr., Attorney General, Laura Young, Assistant Attorney General, Charleston, WV, for the Respondent.

DAVIS, Justice:

In this case, Karen Tanner, the petitioner herein and defendant below (hereinafter referred to as "Ms. Tanner"), appeals an order of the Circuit Court of Clay County that granted her parole with the condition, *inter alia*, that she not "be in the presence or accompaniment of anyone convicted of a felony[,] including her husband." Ms. Tanner contends that the circuit court was without authority to grant parole insofar as parole is an executive function. She further argues that the condition that she not associate with

her husband was an unreasonable burden on her right of marriage. We find that the West Virginia Home Incarceration Act, W. Va.Code § 62–11B–1, *et seq.*, imparts authority to circuit courts to grant parole under the conditions specified therein. In addition, we conclude that the circuit court properly exercised its discretion, and did not act in an unreasonable, capricious, or arbitrary manner, when it imposed upon Ms. Tanner's parole the condition that she not associate with her husband. Accordingly, the order of the circuit court is affirmed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On June 9, 2009, Ms. Tanner pled guilty[1] to one felony offense of manufacturing a controlled substance in violation of West Virginia Code § 60A–4–401 (2005) (Repl.Vol. 2010).[2] Ms. Tanner had been manufacturing methamphetamine together with her husband, Michael Tanner.[3] This was her first criminal offense, and she was released on post-conviction bond pending her sentencing. On July 10, 2009, however, Ms. Tanner failed a drug screen, which was a violation of the terms and conditions of her bond. Consequently, she was incarcerated in the Central Regional Jail to await her sentencing. Ms. Tanner ultimately was sentenced to an indeterminate term of not less than one nor more than five years in the penitentiary.[4] While she was apparently still awaiting transfer

from the Central Regional Jail to the West Virginia Department of Corrections, Ms. Tanner learned that her father was seriously and terminally ill.[5] She subsequently filed an amended motion pursuant to Rule 35 of the West Virginia Rules of Criminal Procedure seeking to have her sentence reduced.[6] Following a hearing on the motion, the circuit court granted the requested sentence reduction. The circuit court suspended the remainder of Ms. Tanner's sentence and placed her on home confinement in her parents' home.

After serving six months of home confinement, Ms. Tanner filed a motion asking the circuit court to release her from home confinement. Following a hearing on the motion, and by amended order entered December 9, 2010, the circuit court released Ms. Tanner from home confinement and placed her on court-supervised parole for a minimum period of two years. In granting court-supervised parole to Ms. Tanner, the circuit court imposed upon her numerous terms and conditions. One of those conditions was that she "shall not be in the presence or accompaniment of anyone convicted of a felony[,] including her husband." It is from the December 9, 2010, order of the circuit court that Ms. Tanner now appeals.

## II.

### STANDARD OF REVIEW

■ This Court is herein asked to review a circuit court order granting court-super-

---

1. Ms. Tanner waived prosecution by indictment and consented to the filing of an information. As a result of the plea agreement, the State dismissed pending felony charges of operating or attempting to operate a clandestine drug laboratory in violation of West Virginia Code § 60A–4–411 (2003) (Repl.Vol.2010), and conspiracy to operate or attempt to operate a clandestine drug laboratory in violation of West Virginia Code § 61–10–31 (1971) (Repl.Vol.2010).

2. West Virginia Code § 60A–4–401 was amended in 2011. Nevertheless, the language of this statute and its amendments are not relevant to the issues addressed in this opinion.

3. Michael Tanner entered pleas of guilty to two offenses: (1) the offense of manufacturing a controlled substance in violation of West Virginia Code § 60A–4–401 (2005) (Repl.Vol.2010), and (2) conspiracy to operate or attempt to operate a

clandestine drug laboratory in violation of West Virginia Code § 61–10–31. He was incarcerated in the Central Regional Jail with a projected release date of July 25, 2014. However, during the oral argument of this case, counsel for Ms. Tanner stated that he has already been released.

4. Because of her failure to comply with the terms and conditions of her bond, the circuit court denied Ms. Tanner's motion for alternative sentencing.

5. Ms. Tanner's mother also was of poor health and unable to be solely responsible for the care of Ms. Tanner's father.

6. Including the time Ms. Tanner spent incarcerated prior to her sentencing, she had been confined for a total of approximately six months without incident when she made her Rule 35 motion for a reduction of her sentence.

vised parole, and imposing certain conditions thereon. In analyzing this case, we are mindful of our general standard for reviewing final orders issued by a circuit court: "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" Syl. pt. 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996). With due consideration for this standard, we proceed with our analysis.

## III.

### DISCUSSION

Ms. Tanner raises two issues related to the parole condition that she not associate with her husband. She first argues that the circuit court erred by imposing an undue burden upon her liberty interest in her marriage without stating upon the record its specific reasons for doing so and without explaining how restricting her association with her husband would assist her rehabilitation. She next argues that the circuit court erred by ordering a blanket ban against her association with her spouse without narrowly tailoring the prohibition to serve a rationally-related state purpose. Following our discussion of a preliminary matter that must be addressed, we will consider these errors in turn.

### A. Court–Ordered Parole

In this case, the circuit court placed Ms. Tanner on court-supervised *parole.* Ms. Tanner states that this was done in contravention of both case law and statutes that make *parole* an executive function. She con-

tends that courts may impose *probation* as a proper exercise of their judicial function, and she therefore analyzes this case as if the circuit court had placed her on *probation.*[7] The State appears to acquiesce in this characterization. We, however, disagree. Prior to her parole, Ms. Tanner had been serving a sentence of home confinement that was imposed by the circuit court. The West Virginia Home Incarceration Act expressly states:

> Notwithstanding any provision of this code to the contrary, in any case where a person has been ordered to home incarceration where that person is not in the custody or control of the Division of Corrections, *the circuit court shall have the authority of the board of probation and parole regarding the release, early release or release on parole of the person.*

W. Va.Code § 62–11B–12(a) (2002) (Repl.Vol. 2010) (emphasis added).[8]

▮▮▮ In our consideration of the meaning of the foregoing statute, we are guided by the long-standing principle that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). We are guided further by our recognition that, "[w]here the language of a statute is clear and without ambiguity[,] the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968).

▮▮▮ We find the language of W. Va. Code § 62–11B–12(a) to be clear. Accordingly, we expressly hold that, pursuant to the West Virginia Home Incarceration Act, specifically W. Va.Code § 62–11B–12(a) (2002)

7. This Court has held that,
> [i]n West Virginia there are fundamental statutory differences between probation and parole in the relationship they bear to the underlying criminal sentence. The term of probation has no correlation to the underlying criminal sentence, while parole is directly tied to it. In effect, there is a probation sentence which operates independently of the criminal sentence.

Syl. pt. 1, *Jett v. Leverette,* 162 W.Va. 140, 247 S.E.2d 469 (1978).

8. Some of our prior cases, as well as several statutes, refer to the West Virginia Parole Board

as the West Virginia Board of Probation and Parole. As this Court has previously explained,

> [t]he Board is an instrumentality of the State of West Virginia, created by law. Until 1994, the Board was known as the West Virginia Board of Probation and Parole. Effective June 10, 1994, the name of the Board was changed to the "West Virginia Parole Board." W. Va. Code § 62-12-12 (1994).

*Parkulo v. West Virginia Bd. of Prob. & Parole,* 199 W.Va. 161, 165 n. 2, 483 S.E.2d 507, 511 n. 2 (1996).

(Repl.Vol.2010), a circuit court has the same authority as that possessed by the West Virginia Parole Board to release on *parole* a person who is serving a sentence of home confinement ordered by the circuit court. Therefore, because the circuit court had the authority to place Ms. Tanner on *parole* following her home confinement, we will analyze this case as a *parole* case, and not in the context of probation.

## B. Parole Authority

Having determined that, under circumstances involving release from home confinement, the circuit court possesses the same authority to grant parole as does the West Virginia Parole Board (hereinafter referred to as "the Parole Board"), we next examine the extent of the Parole Board's authority to impose conditions on a parolee. We engage in this analysis to determine whether the challenged condition imposed upon Ms. Tan-

ner by the circuit court was a proper exercise of its authority.

That conditions may be imposed upon a parolee is beyond dispute. As this Court previously has recognized, "a parolee still has substantial restrictions imposed upon his freedom arising from the conditions of his parole." *Conner v. Griffith,* 160 W.Va. 680, 685, 238 S.E.2d 529, 532 (1977).[9] In fact, certain conditions upon parole are mandatorily imposed by statute. *See* W. Va.Code § 62–12–17 (2004) (Repl.Vol.2010) (directing that release on parole *"shall"* be upon certain enumerated conditions).[10] In addition, the West Virginia Legislature has explicitly directed the Parole Board to adopt procedural rules to govern the granting of parole. *See* W. Va.Code § 62–12–13(g) (2006) (Supp. 2006) ("The board shall, with the approval of the Governor, adopt rules governing the procedure in the granting of parole.").[11] In fulfilling this mandatory duty imposed by statute, the Parole Board has established

9. The *Conner* Court further observed:

"And in fact, as well as in theory, the custody and control of the Parole Board involve significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally. Petitioner is confined by the parole order to a particular community, house, and job at the sufferance of his parole officer. He cannot drive a car without permission. He must periodically report to his parole officer, permit the officer to visit his home and job at any time, and follow the officer's advice. He is admonished to keep good company and good hours, work regularly, keep away from undesirable places, and live a clean, honest, and temperate life. Petitioner must not only faithfully obey these restrictions and conditions but he must live in constant fear that a single deviation, however slight, might be enough to result in his being returned to prison ..."
*Conner v. Griffith,* 160 W.Va. 680, 685–86, 238 S.E.2d 529, 532 (1977) (quoting *Jones v. Cunningham,* 371 U.S. 236, 242, 83 S.Ct. 373, 376, 9 L.Ed.2d 285 (1963)).

10. W. Va.Code § 62–12–17 (2004) (Repl.Vol. 2010) states, in relevant part:

(a) Release and supervision on parole of any person, including the supervision by the Division of Corrections of any person paroled by any other state or by the federal government, shall be upon the following conditions:

(1) That the parolee may not, during the period of his or her parole, violate any criminal law of this or any other state or of the United States;

(2) That he or she may not, during the period of his or her parole, leave the state without the consent of the division;

(3) That he or she shall comply with the rules prescribed by the division for his or her supervision by the parole officer;

(4) That in every case in which the parolee for a conviction is seeking parole from an offense against a child, defined in section twelve [§ 61–8–12], article eight, chapter sixty-one of this code; or article eight-b [§§ 61–8B–1 et seq.] or eight-d [§§ 61–8D–1 et seq.] of said chapter, or similar convictions from other jurisdictions where the parolee is returning or attempting to return to this state pursuant to the provisions of article six [§§ 28–6–1 et seq.], chapter twenty-eight of this code, the parolee may not live in the same residence as any minor child nor exercise visitation with any minor child nor may he or she have any contact with the victim of the offense; and

(5) That the parolee, and all federal or foreign state probationers and parolees whose supervision may have been undertaken by this state, is required to pay a fee, based on his or her ability to pay, not to exceed forty dollars per month to defray costs of supervision.

. . . .

(d) In addition, the division [the Division of Corrections] may impose, subject to modification at any time, any other conditions which the division considers advisable.

11. This statute was amended in 2010, but the provision quoted above was not changed. *See* W. Va.Code § 62–12–13(g) (2010) (Repl.Vol. 2010).

procedural rules that, *inter alia,* recognize its authority to "[g]rant parole *with or subject to special conditions.*" 92 W. Va.C.S.R. 1–8.1.b. (emphasis added). The Parole Board's procedural rules further state that "[i]f the panel decides to grant parole, it shall issue written notification thereof, specifying the grant decision and *any Special Conditions* for supervision of parole, in addition to those specified in W. Va.Code § 62–12–17[,] *the Board deems necessary.*" 92 W. Va. C.S.R. 1–8.4. (emphasis added).[12]

■ The plain language of this procedural rule demonstrates that the Parole Board has the discretion to impose upon a parolee special conditions that it deems are necessary. *See* Syl. pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."). Notably, the foregoing rules are quite broad in allowing the Parole Board to exercise its discretion to impose whatever conditions it deems necessary. Nevertheless, this Court has recognized that " '[t]he West Virginia [Parole] Board … must act in a way which is not unreasonable, capricious, or arbitrary.' Syllabus point 3, *State ex rel. Eads v. Duncil,* 196 W.Va. 604, 474 S.E.2d 534 (1996)." Syl. pt. 1, *State ex rel. Gardner v. West Virginia*

*Div. of Corrs.,* 210 W.Va. 783, 559 S.E.2d 929 (2002).[13]

■ It rationally follows, and we now hold, that when exercising the authority of the West Virginia Parole Board to grant *parole* to a person who is being released from home incarceration, pursuant to the authority granted in the West Virginia Home Incarceration Act, W. Va.Code § 62–11B–12(a) (2002) (Repl.Vol.2010), a circuit court has broad discretion to impose special conditions it deems necessary, so long as its actions are not "unreasonable, capricious, or arbitrary." Syl. pt. 1, in part, *State ex rel. Gardner v. West Virginia Div. of Corrs.,* 210 W.Va. 783, 559 S.E.2d 929.

In the instant case, Ms. Tanner emphasizes that West Virginia has a public policy interest in marriage to "foster and protect it, to make it a permanent and public institution, to encourage the parties to live together, and to prevent separation." *Persinger v. Persinger,* 133 W.Va. 312, 315, 56 S.E.2d 110, 112 (1949) (internal quotations and citation omitted). Therefore, Ms. Tanner essentially argues that the circuit court's restriction on her association with her husband as a condition of her parole was an unreasonable exercise of its discretion that placed an undue burden upon her liberty interest in her marriage.[14]

---

12. See *supra* note 10 for a list of conditions specified in W. Va.Code § 62–12–17.

13. This Court has also recognized that

   [p]arole is not a right, and eligibility for parole does not guarantee the defendant's release from prison. *State v. Scott,* 214 W.Va. 1, 7, 585 S.E.2d 1, 7 (2003). *See also State v. Lindsey,* 160 W.Va. 284, 291 233 S.E.2d 734 738–39 (1977) ("One convicted of a crime and sentenced to the penitentiary is never *entitled* to parole."); *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 536, 276 S.E.2d 205, 213 (1981)("[T]here is no automatic right to parole once the prisoner crosses the threshold of eligibility.")

   Eligibility for consideration of parole, however, is entitled to certain constitutional protections. *See Adkins v. Bordenkircher,* 164 W.Va. 292, 296, 262 S.E.2d 885, 887 (1980) ("Parole eligibility is another facet of penal law scrutinized under the Ex Post Facto Clause.") In Syl. Pt. 6, *State v. Scott,* 214 W.Va. 1, 585 S.E.2d 1, this Court recognized that the opportunity to appear before the Parole Board is a significant right that should be protected….

*State v. Eilola,* 226 W.Va. 698, 703, 704 S.E.2d 698, 703 (2010). *See also* Syl. pt. 2, *Rowe v. Whyte,* 167 W.Va. 668, 280 S.E.2d 301 (1981) (" 'Release on parole is a substantial liberty interest and *the procedures* by which it is granted or denied must satisfy due process standards.' Syl. pt. 3, *Tasker v. Mohn,* [165 W.Va. 55], 267 S.E.2d 183 [ (1980) ]." (emphasis added)); *State v. Lindsey,* 160 W.Va. 284, 291, 233 S.E.2d 734, 738–39 (1977) ("One convicted of a crime and sentenced to the penitentiary is never *entitled* to parole. W. Va.Code, 1931, 62–12–13a, as amended. He is eligible to be considered for parole."); *Brewer v. Boles,* 261 F.Supp. 920, 921 (D.W.Va.1967) (" '[f]reedom, on parole from confinement in a penal institution prior to serving all of an imposed sentence, is a matter of legislative grace— it is a neither constitutionally guaranteed nor a God-given right.' " (quoting *Jones v. Rivers,* 338 F.2d 862, 874 (1964))).

14. Ms. Tanner asserts that marriage is a basic civil right entitled to constitutional protection. In support of this contention, she cites *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967) (striking a Virginia statute

Ms. Tanner, discussing cases addressing *probation* rather than *parole*, asserts that many courts have refused to impose a condition of probation that might prohibit a probationer from associating with his or her spouse.[15] She concedes, however, that there are numerous cases where a prohibition on marital association has been upheld. She contends, though, that these cases appear to be based upon a definitive rehabilitative purpose and a specific reason for the restriction that is not present in her case.

We are unpersuaded by the cases relied upon by Ms. Tanner because those cases involve *probation*, and the special condition we are asked to review in this appeal was imposed on her as a condition of *parole*. As the United States Supreme Court recently observed in the case of *Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006), there are differences between probation and parole, with parole being more analogous to incarceration.

The *Samson* Court considered the validity of a California law subjecting parolees to search or seizure at any time with or without a search warrant and with or without cause. In addressing this issue, the Supreme Court discussed a *probation* case, and reiterated an earlier observation by the Court that

[p]robation is one point ... on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service.... We further observed

that, by virtue of their status alone, probationers " 'do not enjoy "the absolute liberty to which every citizen is entitled," ' " [*United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001) ] (quoting [*Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 3169, 97 L.Ed.2d 709 (1987) ], in turn quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, [2600], 33 L.Ed.2d 484 (1972)), justifying the "impos[ition] [of] reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens," *Knights, supra*, at 119 [122 S.Ct. at 591].

*Samson*, 547 U.S. at 848–49, 126 S.Ct. at 2197, 165 L.Ed.2d 250 (additional quotations and citations omitted). With regard to *parole*, the *Sampson* Court went on to observe that,

[a]s we noted in *Knights*, parolees are on the "continuum" of state-imposed punishments.... On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment. As this Court has pointed out, "parole is an established variation on imprisonment of convicted criminals ... The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey, supra*, at 477 [92

criminalizing interracial marriages on equal protection and due process grounds, and stating that "[m]arriage is one of the basic civil rights of man") (quotations and citation omitted), and *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942) (addressing Oklahoma Habitual Criminal Sterilization Act, and indicating that marriage is one of the "basic civil rights of man").

15. *See Dawson v. Alaska*, 894 P.2d 672, 680–81 (Alaska Ct.App.1995) ("A condition of probation restricting marital association plainly implicates the constitutional rights of privacy, liberty and freedom of association and ... must be subjected to special scrutiny. While discouraging a probationer from associating with former partners in crime is obviously related to the goal of rehabilitation, precluding association between marital partners is just as obviously an extreme restriction of liberty, even when the marital partners were once partners in crime. In certain types of

cases, such as cases involving domestic violence, limiting marital association would plainly be defensible. In any type of case, it is conceivable that such a limitation might be justified by case-specific circumstances demonstrating actual necessity and the lack of less restrictive alternatives. In such a case, however, to avoid unnecessary intrusion on marital privacy, it would seem appropriate to tailor a close fit between the scope of the order restricting marital association and the specific needs of the case at hand.") (footnote omitted); *Bunn v. State*, 144 Ga.App. 879, 881, 243 S.E.2d 105, 107 (1978) (commenting that "it is conceivable ... a rule could require a husband and wife to separate if the husband should be on probation and the wife a convicted felon. We agree that the intent of this rule is not to produce such a harsh result among members of an immediate family, but rather to aid in the rehabilitation of the probationer.").

S.Ct. 2593]. "In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements." *Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 365 [118 S.Ct. 2014, 141 L.Ed.2d 344] (1998). *See also ... United States v. Cardona*, 903 F.2d 60, 63 (C.A.1 1990) ("[O]n the Court's continuum of possible punishments, parole is the stronger medicine; ergo, parolees enjoy even less of the average citizen's absolute liberty than do probationers" (citations and internal quotation marks omitted)).

*Samson*, 547 U.S. at 850, 126 S.Ct. at 2198, 165 L.Ed.2d 250 (additional quotations and citations omitted) (footnote omitted).

In the context of parole, a condition prohibiting contact between spouses has been upheld, albeit generally in circumstances where one spouse has been a victim of the violent acts of the other. *See, e.g., Newland v. Reehorst*, 328 Fed.Appx. 788, 791–92 (3d Cir.2009) (affirming dismissal of civil rights action against parole officer based upon parole condition that parolee not live with his wife, and concluding that parole officer's actions were reasonable based, in part, on "the fact that both Newland *and* his wife were in the criminal justice system and that, even in Newland's telling of the events, the parole officer was concerned that the Newlands would be a poor influence on each other"); *Silvis v. Board of Prison Hearings*, No. EDCV 10–1443 GW (AJW), 2011 WL 7627383 (C.D. Cal. June 8, 2011) (upholding special condition of parole prohibiting contact with wife based on past violence toward her); *Drogheo v. Fieno*, 785 F.Supp.2d 16, 18 (W.D.N.Y.2011) (upholding condition of parole requiring no contact with wife where condition based on previous charge of domestic violence that had been dismissed and sealed); *Boehm v. Evans*, 79 A.D.3d 1445, 1448, 914 N.Y.S.2d 318, 321 (2010) (finding five-year ban on contact with wife as parole condition was constitutional where petitioner, a sex offender, had history of violence toward wife); *Eli v. Board of Parole & Post–Prison Supervision*, 187 Or.App. 454, 67 P.3d 982 (2003) (parole revocation case noting that a condition of parole prohibited contact with wife; underlying offense was unauthorized

use of motor vehicle and felony driving while suspended; and parole was violated when petitioner became intoxicated and threatened wife); *Wheeler v. Pennsylvania Bd. of Prob. & Parole*, 862 A.2d 127, 130 (Pa.Cmwlth. 2004) (commenting that "prohibiting a parolee from having contact with a spouse he has physically abused in the past serves the Parole Act's goal of protecting the public").

■ In the foregoing cases, the parole condition was imposed primarily to further the interest of protecting the public. However, another, equally important, interest is implicated by the instant case: reducing recidivism. The United States Supreme Court

> has repeatedly acknowledged that a State has an " 'overwhelming interest' " in supervising parolees because "parolees ... are more likely to commit future criminal offenses." *Pennsylvania Bd. of Probation and Parole [v. Scott ]*, 524 U.S. [357, 365, 118 S.Ct. 2014, 2020, 141 L.Ed.2d 344 (1998)] (explaining that the interest in combating recidivism "is the very premise behind the system of close parole supervision"). Similarly, this Court has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant ... intrusions that would not otherwise be tolerated.... See *Griffin [v. Wisconsin ]*, 483 U.S. [868, 879, 107 S.Ct. 3164, 3171, 97 L.Ed.2d 709 (1987)]; [*United States v.*] *Knights*, [534 U.S. 112, 121, 122 S.Ct. 587, 592, 151 L.Ed.2d 497 (2001)].

*Samson v. California*, 547 U.S. at 853, 126 S.Ct. at 2200, 165 L.Ed.2d 250. In order to reduce recidivism, a parolee's contact with other felons often is restricted. *See, e.g., Mayo v. Norris*, 5:08cv00313 BSM, 2010 WL 340743, at *5 (E.D.Ark. Jan. 22, 2010) ("Conditions restricting the freedom of parolees and probationers to associate with persons who have been convicted of crimes have been upheld against First Amendment challenges. .... As explained by the Eighth Circuit, association conditions imposed on parolees are reasonably and necessarily related to the substantial governmental interests in their rehabilitation and in the protection of the

public from further crime.... The two parole conditions that Petitioner specifically challenges—*association with felons* and maintaining a residence—are neutral, general restrictions commonly applied to parolees." (emphasis added) (quotations and citations omitted)); *Haugen v. Marshall,* 740 F.Supp.2d 1150, 1162 (C.D.Cal.2010) ("[A]n inmate-turned-parolee remains in the legal custody of the California Department of Corrections through the remainder of his term, and must comply with all of the terms and conditions of parole, including … restrictions on association with felons[.]" (quotations and citation omitted)).

■ In the instant case, it is apparent that the circuit court's condition that Ms. Tanner not associate with her husband was for the purpose of reducing the risk that she would become a repeat offender. This is evidenced by the fact that, in the order, the circuit court combined the requirement that Ms. Tanner not associate with her husband with the general requirement that she not associate with anyone convicted of a felony: "[t]he defendant shall not be in the presence or accompaniment of anyone convicted of a felony[,] including her husband." Given the facts of this case, we find this restriction was a proper exercise of the circuit court's authority. In particular, Ms. Tanner's criminal activity was carried out in concert with her husband, insofar as they manufactured and used methamphetamine together. Additionally, while Ms. Tanner's underlying conviction represented her first offense, her husband has a lengthy criminal record. Furthermore, Ms. Tanner admits that her

insecurities about her husband's perceptions of her weight contributed to her use of methamphetamine.[16] Finally, the record demonstrates Ms. Tanner's struggle with the highly addictive drug methamphetamine. After her plea of guilty, while she was free on bond awaiting sentencing, she failed a drug test. Based upon these facts,[17] we conclude that it was reasonable for the circuit court to determine that Ms. Tanner's best chance of successfully avoiding repeated criminal conduct would be for her to refrain from contact with her husband, a convicted felon, throughout the duration of her parole.[18]

## IV.

## CONCLUSION

For the reasons explained in the body of this opinion, we find the circuit court properly exercised its discretion, and did not act in an unreasonable, capricious, or arbitrary manner, when it imposed upon Ms. Tanner's parole the condition that she not associate with her husband.

Affirmed.

---

16. In her petition to this Court, Ms. Tanner states that she has given birth to six children and is, therefore, prone to weight gain. She further explains that her husband is younger and more trim than she is, which played upon her insecurities and increased the attractiveness to her of using methamphetamine.

17. Ms. Tanner attempts to place these facts in a more positive light by asserting that she has been married to Michael Tanner for thirteen years and that they have a good relationship and a good marriage. She claims that she and her husband would be supportive of each other's rehabilitation. Ms. Tanner acknowledges that Michael has an extensive criminal history, but she claims that a nine-year lull in his criminal activity coincided with the couple's marriage, evidenc-

ing that Ms. Tanner is a good influence on her husband. She claims that her involvement in the illegal manufacture of methamphetamine was not so much a reflection of her husband's bad influence, but was a result of the insidious effects of methamphetamine itself and Ms. Tanner's own insecurities. This characterization of the facts notwithstanding, there remain sufficient grounds to support the circuit court's restriction on her association with her husband as a condition of her parole.

18. Ms. Tanner additionally argues that the circuit court failed to make specific findings of fact to support its decision with regard to parole conditions. We reject this argument. The record in the instant case provides sufficient support for the circuit court's decision.