IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 19-0005

_____

**FILED**
**June 11, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

NICHOLAS VARLAS,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Brooke County
The Honorable Jason A. Cuomo, Judge
Case No. 13-F-63

VACATED AND REMANDED

_____

Submitted: March 18, 2020
Filed: June 11, 2020

Carl A. Frankovitch, Esq.                    Patrick Morrisey, Esq.
M. Eric Frankovitch, Esq.                   Attorney General
FRANKOVITCH, ANETAKIS,               Caleb A. Ellis, Esq.
SIMON, DECAPIO & PEARL, LLP      Assistant Attorney General
Weirton, West Virginia                         Andrea Nease Proper
Counsel for Petitioner                          Assistant Attorney General
                                                            Charleston, West Virginia
                                                            Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

CHIEF JUSTICE ARMSTEAD and JUSTICE HUTCHISON dissent and reserve their rights to file separate opinions.

SYLLABUS BY THE COURT

1.    "'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)." Syllabus Point 2, *State v. Georgius*, 225 W. Va. 716, 696 S.E.2d 18 (2010).

2.    "The provisions of the Constitution of the State of West Virginia may, in certain instances, require higher standards of protection than afforded by the Federal Constitution." Syllabus Point 2, *Pauley v. Kelly*, 162 W. Va. 672, 255 S.E.2d 859 (1979).

3.    "Upon a defendant's conviction at retrial following prosecution of a successful appeal, imposition by the sentencing court of an increased sentence violates due process and the original sentence must act as a ceiling above which no additional penalty is permitted." Syllabus Point 1, in part, *State v. Gwinn*, 169 W. Va. 456, 288 S.E.2d 533 (1982).

4.    When a defendant successfully appeals a conviction for which he or she was granted probation, *State v. Eden*, 163 W. Va. 370, 256 S.E.2d 868 (1979), prohibits a circuit court from imposing a longer term of probation, or withholding probation entirely, when sentencing the defendant upon reconviction at a later trial for the same crime or crimes, post-appeal. To the extent that it conflicts with *Eden's* due process protections, we

i

overrule our decision in *State v. Workman*, No. 13-0133, 2013 WL 6183989 (November 26, 2013) (memorandum decision).

WALKER, Justice:

In 2014, Petitioner Nicholas Varlas was convicted of attempted sexual abuse in the first degree[1] and sexual assault in the second degree.[2] For the latter crime, he was sentenced by the Circuit Court of Brooke County to ten to twenty-five years' incarceration, but that sentence was suspended in favor of five years' probation. Mr. Varlas successfully appealed to this Court, and we reversed his convictions and remanded for a new trial in 2016. A second trial ended in a mistrial. In 2018, the circuit court conducted a third trial and a jury once again convicted Mr. Varlas of one count each of attempted sexual abuse in the first degree and sexual assault in the second degree. But when the circuit court entered a new sentencing order, it failed to suspend the sentence of ten to twenty-five years' incarceration in favor of probation.

Mr. Varlas now appeals that sentencing order, arguing that the circuit court's failure to suspend that sentence in favor of probation violates his constitutional due process rights and this Court's prohibition on heightened sentencing upon reconviction post-appeal. We agree that the sentence is an impermissible increase in penalty under *State v. Eden*[3] and vacate the circuit court's December 2018 sentencing order and remand for resentencing.

---

[1] W. Va. Code § 61-8B-4.

[2] W. Va. Code § 61-11-8(2); W. Va. Code § 61-8B-7.

[3] 163 W. Va. 370, 256 S.E.2d 868 (1979).

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August of 2012, Mr. Varlas hosted a social gathering at his home and the victim, N.S., attended. At some point during the evening, Mr. Varlas and N.S. were left alone and watched a pornographic film together. During the film, Mr. Varlas and N.S. engaged in sexual intercourse. The following day, N.S. reported the incident to police alleging that the intercourse was nonconsensual.

A Brooke County grand jury later indicted Mr. Varlas on one count of attempted sexual abuse in the first degree and one count of sexual assault in the second degree. After a jury trial conducted in September 2014, the jury returned a verdict of guilty on both counts. On December 18, 2014, the Circuit Court of Brooke County entered a sentencing order (2014 Order) in which it sentenced Mr. Varlas as follows: (1) one to three years' incarceration for attempted sexual abuse in the first degree, and (2) ten to twenty-five years' incarceration for sexual assault in the second degree. The court then suspended the ten-to-twenty-five-year sentence in favor of five years' probation and required Mr. Varlas to register as a sex offender for life.[4]

Mr. Varlas appealed his convictions to this Court, arguing that the circuit court violated his constitutional right to a fair trial by precluding the introduction of certain text messages into evidence. This Court agreed and in 2016 reversed Mr. Varlas's

---

[4] *See* West Virginia Sex Offender Registration Act, W. Va. Code §§ 15-12-1 to -10.

convictions and remanded the case for a new trial.[5]  While awaiting our decision in that matter, Mr. Varlas completed his sentence of one to three years' incarceration and was released.  He began serving his term of probation approximately two weeks prior to the publication of our opinion on June 16, 2016.  As a result of our decision, the circuit court immediately discontinued Mr. Varlas's probation pending a new trial.

The circuit court conducted a second trial in May 2018, which ended in a mistrial due to the prosecution's introduction of improper and unfairly prejudicial testimony.  The circuit court then conducted a third trial in October 2018.  As with the first trial, Mr. Varlas was convicted of one count of attempted sexual abuse in the first degree and one count of sexual assault in the second degree.  After a sentencing hearing, the circuit court entered a new sentencing order on December 4, 2018 (2018 Order).  A different sentencing judge entered the 2018 Order than entered the 2014 Order.  In the 2018 Order, the circuit court acknowledged that under this Court's holding in *State v. Eden*, it could not impose a harsher penalty upon Mr. Varlas than had been imposed by the 2014 Order.  Despite this acknowledgement, the circuit court then imposed a harsher penalty.  Specifically, though the 2018 Order imposed an identical term of incarceration to the 2014 Order, it failed to suspend the ten-to-twenty-five year sentence for sexual assault in the second degree in favor of five years' probation.  That failure is the basis of this appeal.

---

[5] *State v. Varlas*, 237 W. Va. 399, 787 S.E.2d 670 (2016).

## II. STANDARD OF REVIEW

We have previously held that "the Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands."[6] With this standard in mind, we proceed to address the parties' arguments.

## III. DISCUSSION

On appeal, Mr. Varlas argues that the 2018 Order was erroneous because the circuit court failed to suspend his sentence of ten to twenty-five years' incarceration in favor of five years' probation as it had done in the 2014 Order. He contends that the failure to grant probation in the 2018 Order effectively imposed a harsher penalty upon him than the 2014 Order did, thereby violating this Court's precedent prohibiting harsher penalties upon reconviction post-appeal under *Eden*. The State defends the 2018 Order, arguing first that because the United States Supreme Court has overruled its decisions relied on by this Court in *Eden,* it has effectively invalidated *Eden*. In the alternative, the State argues that if *Eden* is valid, the circuit court did not err when it did not grant probation in the 2018 Order because probation is not part of a criminal sentence. So, the State reasons, probation need not have been considered by the lower court in determining whether the 2018 Order imposed a harsher penalty than the 2014 Order. We analyze each of these arguments in turn.

---

[6] Syl. Pt. 2, *State v. Georgius*, 225 W. Va. 716, 696 S.E.2d 18 (2010) (citing Syl. Pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)).

4

## A. *Eden remains valid precedent in the State of West Virginia.*

The outcome of this appeal depends entirely upon the operation and interpretation of our holding in *Eden*. As such, before we can address whether the circuit court violated the due process protections articulated in *Eden*, we revisit the issues and analysis in that case. Law enforcement arrested Mr. Eden on a warrant for reckless driving in a school zone.[7] The magistrate court held a trial, found Mr. Eden guilty of a misdemeanor, and fined him fifty dollars plus costs.[8] Mr. Eden appealed to the circuit court, which held a trial de novo.[9] At the end of the trial, the jury found Mr. Eden guilty and the court sentenced him to thirty days in jail plus a two-hundred-dollar fine.[10] Mr. Eden appealed to this Court arguing that the circuit court violated his due process rights by imposing a harsher sentence than that imposed by the magistrate court.[11]

To resolve Mr. Eden's appeal, we looked to the 1969 decision by the Supreme Court of the United States in *North Carolina v. Pearce*.[12] In *Pearce*, the Court considered "the constitutional limitations upon the imposition of a more severe punishment

---

[7] *Eden*, 163 W. Va. at 371, 256 S.E.2d at 870.

[8] *Id*. at 372, 256 S.E.2d at 870.

[9] *Id*. at 372, 256 S.E.2d at 871.

[10] *Id*.

[11] *Id*. at 373, 256 S.E.2d at 871.

[12] 395 U.S. 711 (1969).

after conviction for the same offense upon retrial."[13]  The Court found that a harsher sentence on retrial following a successful appeal did not raise double jeopardy or equal protection concerns.  But, the Court reasoned, that kind of sentence raised serious due process concerns.  As the Court explained, the harsher sentence would be a penalty for pursuing an appeal:

> even if the first conviction has been set aside for nonconstitutional error, the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law.  A new sentence, with enhanced punishment, based upon such a reason, would be a flagrant violation of the rights of the defendant.  A court is without right to put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered. It is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice.[14]

The Supreme Court set out two guiding principles to justify this prohibition on heightened punishments post-appeal: (1) concerns about vindictiveness in sentencing, and (2) the chilling effect such harsher penalties may have on appeals.[15]

*Pearce* and *Eden* arose in different contexts.  In *Pearce*, the defendants had successfully attacked their original convictions via appeal and were convicted at retrial,

---

[13] *Id.* at 715-16.

[14] *Id.* at 724 (internal quotations and citations omitted).

[15] *Id*. at 724-25.

while in *Eden* the defendant did not attack his conviction, but sought a trial de novo.[16]  This

Court addressed both scenarios in *Eden,* explaining that

> the question of increased sentencing on reconviction
> after remand from an appellate court is a matter of grave
> concern to this Court and a discussion of the issues involved
> seems necessary to a determination of the case at hand.
> Therefore, we will consider the effect on due process in West
> Virginia of increased sentences imposed after reconviction
> following an appeal attacking the original conviction as well as
> those imposed upon conviction at a trial De novo granted as a
> matter of statutory right.[17]

After the *Eden* court analyzed *Pearce*, it then adopted the Supreme Court's

reasoning that, once states establish avenues of appellate review, they must "'be kept free

of unreasoned distinctions that can only impede open and equal access to the courts.'"[18]

We then found that increased penalties upon reconviction post-appeal infringe upon

defendants' due process rights and right to an appeal under West Virginia law.[19]

Specifically, we stated that

> when a defendant refuses to prosecute an appeal to
> which he is entitled by law for fear that he will receive a
> heavier sentence on retrial, he has been denied his right to
> appeal.  The decision not to appeal is the defendant's but the
> necessity of making the decision is forced upon him by the
> State.  The State is in effect imposing conditions upon the

---

[16] *Eden*, 163 W. Va. at 381, 256 S.E.2d at 875.

[17] *Id*. at 381, 256 S.E.2d at 875.

[18] *Id*. at 380, 256 S.E.2d at 874 (citing *Pearce*, 395 U.S. at 724-725).

[19] *Id*. at 382, 256 S.E.2d at 875.

defendant's right to appeal by telling him that he has the right,
but that by exercising it he risks a harsher sentence.[20]

We also explicitly adopted the two concerns that drove the Supreme Court's decision in *Pearce*: (1) concerns about vindictiveness in sentencing, and (2) the chilling effect such harsher penalties may have on appeals.[21] We do not address vindictiveness here, because it is not implicated on these facts, nor has Mr. Varlas argued that it is.[22] As such, we focus our analysis on the chilling effect increased penalties post-appeal have on a defendant's due process right to an appeal.

According to the State, the Supreme Court has decided other cases that undermine the underlying principles of *Pearce*, and, therefore, our decision in *Eden.* The first of these is *Chaffin v. Stynchcombe*,[23] decided in 1973. In that case, the Supreme Court

---

[20] *Id.*

[21] *Id.* at 384, 256 S.E.2d at 876 ("Protection of the criminal defendant's fundamental right to appeal and avoidance of any possible vindictiveness in resentencing would force us to hold that upon a defendant's conviction at retrial following prosecution of a successful appeal, imposition by the sentencing court of an increased sentence violates due process and the original sentence must act as a ceiling above which no additional penalty is permitted.").

[22] Regarding vindictiveness, the State cites to the United States Supreme Court's 1989 opinion in *Alabama v. Smith*, 490 U.S. 794, which holds that there is no presumption of vindictiveness when a defendant receives an increased punishment after a jury trial post-appeal, when the original, lighter punishment resulted from a guilty plea. *Smith* focuses solely on vindictiveness and does not address the chilling effect increased penalties post-appeal have on a defendant's due process right to appeal. As noted above, the facts in this case do not implicate vindictiveness at all, so we conclude that *Smith* is not relevant to our discussion today and does not adversely impact the validity of *Eden* and its progeny with regard to our due process analysis.

[23] 412 U.S. 17 (1973).

held that the possible chilling effect of a harsher sentence on retrial does not place an impermissible burden on the right of a criminal defendant to appeal his conviction.[24] *Chaffin* is not the hurdle the State makes it out to be. We were undeniably aware of *Chaffin* when we decided *Eden* in 1979—six years after *Chaffin*. And, while *Chaffin* undermines the chilling effect concerns in terms of federal due process standards, we made clear in *Eden* that our due process concerns stemmed from much broader principles:

> In West Virginia a person convicted of a crime is entitled to the right to appeal his conviction and a denial of that right constitutes a violation of both federal and state due process clauses and renders the conviction void. *It is clear to us that when a defendant refuses to prosecute an appeal to which he is entitled by law for fear that he will receive a heavier sentence on retrial, he has been denied his right to appeal.*[25]

Therefore, we clearly based *Eden* not only on federal due process protections, but also on the due process protections afforded by the West Virginia Constitution.

And, while we did not explicitly address *Chaffin* in *Eden*, we did address *Colten v. Kentucky*,[26] a 1972 decision by the Supreme Court. But, as we distinguished *Colten* in *Eden,* that case has not undermined *Eden's* general prohibition against increased punishments post-appeal. In *Colten*, the Supreme Court held that a more severe sentence

---

[24] *Id*. at 29.

[25] *Eden*, 163 W. Va. at 381–82, 256 S.E.2d at 875 (internal citations omitted) (emphasis added).

[26] 407 U.S. 104 (1972).

9

imposed after reconviction post-appeal did not violate a defendant's due process rights.[27]

In *Eden* (decided seven years after *Colten*), we explicitly rejected *Colten's* holding and instead relied on Justice Marshall's dissent in that case. We stated:

> We agree with Justice Marshall's analysis of *Pearce* [in his *Colten* dissent]. The opportunity for vindictive sentencing is inherent in any system which permits increased sentencing upon conviction at a new trial. And even if vindictiveness can be positively shown not to exist, the deterrent effect of increased sentencing on the exercise of the right to obtain a new trial deprives a defendant of his statutory right to a trial De novo, his only avenue of post-conviction relief, in the same way it deprives a defendant desiring to attack his conviction of his right to appeal. We can see no justification for distinguishing between the burden placed on the defendant's rights in either instance.[28]

So, while *Chaffin* and *Colten* (both decided before *Eden*) may undermine *Pearce* in terms of a defendant's *federal* due process rights, those cases don't undermine *Eden* to the extent that it is based on due process protections under our state constitution. We have made it abundantly clear that "[t]he provisions of the Constitution of the State of West Virginia may, in certain instances, require higher standards of protection than afforded by the Federal Constitution."[29]

---

[27] *Id*. at 116-117 (finding that Kentucky's appellate system posed no reasonable likelihood that defendants would be deterred from seeking out retrials out of fear of vindictiveness and harsher penalties).

[28] *Eden*, 163 W. Va. at 386, 256 S.E.2d at 877.

[29] Syllabus Point 2, *Pauley v. Kelly*, 162 W. Va. 672, 255 S.E.2d 859 (1979).

In sum, we conclude that *Eden* remains valid precedent in the State of West Virginia because *Eden* is predicated on the stronger due process protections afforded by the West Virginia Constitution. As we plainly stated in that case:

> Protection of the criminal defendant's fundamental right to appeal and avoidance of any possible vindictiveness in resentencing would force us to hold that upon a defendant's conviction at retrial following prosecution of a successful appeal, imposition by the sentencing court of an increased sentence violates due process and the original sentence must act as a ceiling above which no additional penalty is permitted.[30]

So, we affirm the due process principles which underlie *Eden*—principles that prohibit increased penalties upon reconviction post-appeal—and reject the State's invitation to overrule *Eden* and its progeny.

### B. For the limited purpose of an **Eden** analysis, probation must be considered as part of a criminal sentence.

Having confirmed the precedential value of *Eden* in our state, we now turn our attention to Mr. Varlas's assignment of error. He argues that the circuit court erred in the 2018 Order by failing to suspend his sentence of ten to twenty-five years' incarceration in favor of five years' probation, as it had originally done in the 2014 Order. He further argues that this failure resulted in an impermissible increase in penalty, which is contrary to *Eden's* prohibition on such harsher penalties post-appeal. The State counters that the harsher 2018 sentence does not run afoul of *Eden* because that case applies only to the

---

[30] *Id.* at 384, 256 S.E.2d at 876.

11

criminal *sentence*. In the State's view, probation is not part of a criminal sentence, so the circuit court did not violate *Eden's* prohibition on harsher penalties when it did not extend probation to Mr. Varlas in 2018.

The State rests its argument on a recent memorandum decision, *State v. Workman*,[31] in which we addressed the question of whether probation is part of a sentence. In that case, the defendant brought an *Eden* challenge arguing that the circuit court imposed a harsher penalty upon him than the magistrate court had imposed. The magistrate court sentenced Mr. Workman to one year of incarceration suspended in favor of one year unsupervised probation.[32] On appeal, the circuit court imposed a nearly identical sentence, but required *supervised* probation.[33] Before this Court, Mr. Workman argued that the change in probationary conditions constituted an *Eden* violation as the penalty was harsher.[34] We rejected his *Eden* challenge, reasoning that the relevant consideration was not the supervised or unsupervised nature of the probation, but the *term of incarceration*.[35] Upon review, we find that our reasoning in *Workman* was flawed and warrants correction.[36]

---

[31] 2013 WL 6183989 (Nov. 26, 2013) (memorandum decision).

[32] *Id*. at *1.

[33] *Id*.

[34] *Id*. at *2.

[35] *Id*.

[36] Before overruling *Workman*, we reiterate the precedential hierarchy of our case law. We have held that "[s]igned opinions containing original syllabus points have the highest precedential value because the Court uses original syllabus points to announce new

12

Fundamentally, the due process concerns that we addressed in *Eden* do not arise solely when a criminal defendant appeals from magistrate court to circuit court. Rather, those due process concerns arise whenever a criminal defendant faces harsher penalties when sentenced after appeal. The facts of *Eden* illustrate this. There, after Mr. Eden appealed from magistrate court to the circuit court, the circuit court sentenced him to thirty days in jail plus a two-hundred-dollar fine.[37] We reversed the circuit court's sentencing order because both penalties—incarceration and fine—exceeded the penalty imposed by the magistrate.[38] That is why we stated in *Eden* that "[i]ncreased sentencing upon reconviction after successful prosecution of an appeal inherently gives rise to a fear of *harsher penalties* and retribution which burdens or chills the defendant's right to appeal

_____

points of law or to change established patterns of practice by the Court." Syl. Pt. 1, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014). Further, "[w]hile memorandum decisions may be cited as legal authority, and are legal precedent, their value as precedent is necessarily more limited; where a conflict exists between a published opinion and a memorandum decision, the published opinion controls." *Id.* at Syl. Pt. 5. We have also explicitly stated that "our precedents, whether set forth in an opinion or a memorandum decision, are not sacrosanct and will be reversed where warranted by the law[.]" *In re T.O.*, 238 W. Va. 455, 465, 796 S.E.2d 564, 574 (2017). Finally, we have held that "[a]n appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law." Syl. Pt. 2, *Dailey v. Bechtel Corp.*, 157 W. Va. 1023, 207 S.E.2d 169 (1974). With these holdings in mind, we now address why we find the *Workman* decision to have involved serious judicial error so as to warrant its overturning.

[37] *Id.*

[38] *Id.* at 373, 256 S.E.2d 871.

13

and should not be permitted in any circumstances."[39]  For that reason, we conclude that the essence of an *Eden* challenge is not the term of incarceration, but rather the total penalty imposed by the sentencing court upon reconviction.  *Workman* was wrongly decided because it failed to appreciate this critical distinction.

Other considerations support that conclusion.  In *Workman*, we cited a partial footnote from *State v. Tanner*[40] for the proposition that "probation has no correlation to the underlying criminal sentence." [41]  This citation is wrong for several reasons.  First, the quotation is incomplete, as that footnote actually includes the full language of our holding in Syllabus Point 1 of *Jett v. Leverette*, which reads, in relevant part, that "[t]he *term of probation* has no correlation to the underlying criminal sentence."[42]  This is critical because *Jett* stands for the proposition that the duration of a probation *term* is not dependent upon the duration of the underlying criminal sentence.  That is why a defendant can be sentenced to ten to twenty-five years' incarceration but have that sentence suspended in favor of a

---

[39] *Id*. at 382, 256 S.E.2d at 875 (emphasis added).

[40] 229 W. Va. 138, 141 n.7, 727 S.E.2d 814, 817 n.7 (2012) ("This Court has held that, '[i]n West Virginia there are fundamental statutory differences between probation and parole in the relationship they bear to the underlying criminal sentence.  The term of probation has no correlation to the underlying criminal sentence, while parole is directly tied to it.  In effect, there is a probation sentence which operates independently of the criminal sentence.' Syl. pt. 1, *Jett v. Leverette*, 162 W. Va. 140, 247 S.E.2d 469 (1978).").

[41] *Workman*, 2013 WL 6183989 at *2 (citing *State v. Tanner*, 229 W. Va. 138, 727 S.E.2d 814 (2012)).

[42] Syl. Pt. 1, *Jett v. Leverette*, 162 W. Va. 140, 247 S.E.2d 469 (1978) (emphasis added).

14

significantly shorter term of probation (up to a maximum of seven years).[43]  By failing to

cite that full language, *Workman* altered the meaning of that holding to stand for an entirely

different proposition that probation and the underlying criminal sentence are never related.

Second, *Workman's* citation to *Tanner* is apparently without justification.

Upon reviewing *Tanner*, it is clear that probation was little more than a passing issue in

that case because the petitioner erroneously believed that the circuit court could only grant

her probation, rather than parole, from her term of home confinement.[44]  The footnote is

apparently placed simply to denote our prior holding in *Jett* because it highlighted the

distinctions between parole and probation and their effect upon the underlying criminal

sentence.

And, in reviewing the source of that footnote, *Jett's* holding does not appear

to have any adverse implications for *Eden's* prohibition against increased penalties post-

appeal.  In fact, in examining *Jett*, it is clear that we did not analyze the due process

---

[43] W. Va. Code § 62-12-11.

[44] In *Tanner*, the petitioner appealed an order from the circuit court that granted her *parole* from her term of home incarceration with the condition that she not "be in the presence of accompaniment of anyone convicted of a felony[,] including her husband." *Tanner*, 229 W. Va. at 139, 727 S.E.2d at 815.  In addressing Ms. Tanner's argument that the circuit court could only place her on probation because parole is an executive authority, we held that the Home Incarceration Act clearly provided that a circuit court had the same authority as the board of probation and parole regarding release, early release, or release on parole of the concerned person. *Id.* at 141, 727 S.E.2d at 817.  We never addressed the distinctions between probation and parole in any depth in that case, so our reference to *Jett* was merely in passing.

protections implicated by increased penalties at all.[45]  This is so for several reasons.  First

and foremost, *Jett* arose, not out of an appeal, but out of a writ of habeas corpus predicated

on double jeopardy, an entirely different procedural context.  Though *Eden* did not exist at

the time of *Jett's* decision, *Pearce* did.  And in *Pearce*, before finding that due process

protections prohibited increased penalties upon reconviction post-appeal, the United States

Supreme Court clearly stated that "[l]ong-established constitutional doctrine makes clear

that, beyond the requirements already discussed, the guarantee against double jeopardy

imposes no restrictions upon the length of a sentence imposed upon reconviction."[46]  So,

even though the protection against double jeopardy places no restriction on increased

sentences upon reconviction, due process considerations do impose such restrictions.  And,

as noted above, even though *Pearce's federal* due process considerations have been

undermined, the West Virginia Constitution affords greater protection than its federal

counterpart, so our *state* due process considerations are still valid.  Therefore, because *Jett*

---

[45] In *Jett*, the circuit court revoked the petitioner's probation and re-imposed his original criminal sentence.  *Jett*, 162 W. Va. at 140, 247 S.E.2d at 470.  The petitioner sought credit for time served calculated based on the time he spent on probation.  *Id.*  The circuit court declined and the petitioner sought a writ of habeas corpus on grounds that failure to grant time served amounted to double jeopardy.  *Id.*  He argued that similarly situated persons who had been paroled, rather than granted probation, were entitled to time served.  *Id.* at 141, 247 S.E.2d at 470.  In denying the writ, we illustrated several differences between parole and probation, including that the term of probation does not correlate to the underlying criminal sentence, whereas parole does directly correlate to that underlying sentence in that it shortens the amount of time the person is incarcerated.  *Id.* at 144-45, 247 S.E.2d at 471-72.

[46] *Pearce,* 395 U.S. at 719.

is predicated on the guarantee against double jeopardy, rather than due process, it has no bearing upon *Eden's* prohibition against increased penalties upon reconviction post-appeal.

Returning to *Workman*, we also cited Syllabus Point 2 of *State ex rel. Strickland v. Melton*,[47] which states that "[p]robation is not a sentence for a crime but instead is an act of grace upon the part of the State to a person who has been convicted of a crime." That holding clearly stands for the proposition that a defendant is not entitled to probation as a matter of law, but that the court may, in its discretion, grant probation to those it finds deserving of a more lenient punishment than incarceration.

We still agree with the holding that a criminal defendant is not *entitled* to probation, but we also see that it has limited applicability in the unique context of an *Eden* challenge. Specifically, we must address whether *Eden's* prohibition against harsher penalties upon reconviction post-appeal is implicated when a sentencing court suspends a defendant's criminal sentence in favor of probation in the first instance, but fails to extend

---

[47] 152 W. Va. 500, 165 S.E.2d 90 (1968). Much like *Jett*, *Melton* was before this Court on a writ of habeas corpus rather than direct appeal. In that case, the defendant pled guilty to the crime of forcible rape. *Id*. The court suspended imposition of sentence and granted petitioner a three-year probation term. *Id*. at 502, 165 S.E.2d at 92. One year later, after the petitioner was indicted on charges of grand larceny, the court revoked his probation and imposed a sentence of five to twenty years' incarceration for the rape conviction. *Id*. A different court also sentenced petitioner to one to ten year's incarceration for the grand larceny conviction. *Id*. In his writ, the petitioner alleged that the circuit court violated his due process rights to representation by counsel because he was not represented by counsel when the court revoked his probation. *Id*. at 504, 165 S.E.2d at 93. He also argued that he was denied the right to a fair trial because was "required to bargain for justice . . . when he entered his plea of guilty to the indictment for the crime of forcible rape." *Id*. at 505, 165 S.E.2d at 93.

17

the same grant of probation upon reconviction for the same crime or crimes post-appeal. To reiterate, the protections of *Eden* arise from concerns that harsher penalties upon reconviction post-appeal deter defendants from appealing their convictions and deny defendants their due process right *to an appeal*. *Melton* involved a criminal defendant's due process right to counsel and to a fair trial—not his right to an appeal. As such, *Melton* does not guide us in terms of the due process right to appeal, so we must undertake an analysis here to determine whether a defendant has been deprived of due process when a sentencing court extends to him or her a grant of probation at the original sentencing, but fails to extend that same grant of probation when he or she is convicted of the same crime or crimes post-appeal.

A defendant like Mr. Varlas, who brings an *Eden* challenge on the basis that probation has been denied, does so after the court granted probation at the first sentencing, but found the defendant undeserving of that more lenient punishment upon reconviction for the same crime or crimes post-appeal. In that situation, the defendant has already had the benefit of a lighter penalty in the first instance, but has been given a *heavier penalty* in the second, even where the terms of incarceration were identical. Mr. Varlas's case provides a perfect example of how two "identical" sentences can, in reality, be vastly different for the defendant. Here, Mr. Varlas was originally sentenced to ten to twenty-five years' incarceration suspended in favor of five years' probation (the statutory

18

maximum at the time).[48]  He appealed to this Court and we reversed his conviction and remanded for new trial.  Upon his reconviction for the same crimes, he was again sentenced to an identical criminal sentence of ten to twenty-five year's incarceration, but that sentence was not suspended in favor of five years' probation.  While it is reasonable to say that the pre- and post-appeal *criminal sentences* are identical—as we did in *Workman*—it cannot be argued that the pre- and post-appeal *penalties* are the same for the defendant.  To the person experiencing that punishment, there is a harsh distinction between the relative freedom of probation and the ultimate restriction of incarceration.  It does not stretch the imagination to conclude that if a defendant knew pursuing an appeal risked the loss of probation's significantly less-restrictive punishment, he or she might decline to pursue that appeal.  That risk is certainly heightened where one, like Mr. Varlas, faces the potential of many years behind bars, as opposed to five years of monitored freedom.  As we recognized in *Eden*, when a defendant refuses to pursue an appeal for fear of receiving a harsher punishment upon reconviction for the same crimes post-appeal, the defendant has been denied his due process right to an appeal.[49]

So, we conclude that contrary to our memorandum decision of November 26, 2013, the due process protections of *Eden* extend not only to terms of incarceration but also to terms of probation.  In light of that conclusion, we now hold that when a defendant

---

[48] The statutory maximum was raised from five to seven years in 2017.  W. Va. Code § 62-12-11.

[49] See *Eden*, 163 W. Va. at 382, 256 S.E.2d at 875.

successfully appeals a conviction for which he or she was granted probation, *State v. Eden*, 163 W. Va. 370, 256 S.E.2d 868 (1979), prohibits a circuit court from imposing a longer term of probation, or withholding probation entirely, when sentencing the defendant upon reconviction at a later trial for the same crime or crimes, post-appeal. To the extent that it conflicts with *Eden's* due process protections, we overrule our decision in *State v. Workman*, No. 13-0133, 2013 WL 6183989 (November 26, 2013) (memorandum decision).

Applying the *Eden* protections in this case, we agree with Mr. Varlas that the 2018 Order imposes a heavier penalty than the 2014 Order because it fails to suspend his ten-to-twenty-five year sentence in favor of five years' probation.[50] To conclude otherwise would be to perpetuate an untenable reading of *Eden* that would allow defendants who are given lighter punishments like probation to risk the loss of the lighter punishments if reconvicted post-appeal. That possibility would undeniably lead many defendants to forgo an appeal. That is clearly in conflict with our express statement in *Eden* that when a defendant declines to appeal his conviction out of fear of receiving a heavier punishment, the defendant's due process rights have been violated because his or her right to an appeal

---

[50] The parties also allude to the circuit court's finding that Mr. Varlas was granted probation in the 2014 Order because he expressed remorse for his conduct, but that he was denied probation in the 2018 Order because he did not express that same remorse. That finding is irrelevant to this discussion because *Eden* openly rejects the notion that "additional information not available to the first judge could be the basis for an increased penalty." *Eden*, 163 W. Va. at 383, 256 S.E.2d at 875.

20

has been denied. So, we vacate the circuit court's sentencing order and remand for resentencing consistent with this opinion.

## IV. CONCLUSION

Based on the foregoing, we vacate the Circuit Court of Brooke County's December 4, 2018 Sentencing Order and remand this matter for resentencing consistent with this opinion.

Vacated and remanded.